# SELOVER v. AMERICAN RUSSIAN COMMERCIAL COMPANY.

Where a *feme sole* becomes the owner of shares of stock in a company, and afterwards marries, and after marriage the husband and wife execute an endorsement on the certificate of stock, purporting to sell the same to A, without any privy examination of the wife, and there being at the time no inventory of the separate property of the wife on record : *Held*, that such sale was void, as against a subsequent purchaser, under an instrument duly signed and acknowledged.

The capacity of the wife to hold separate property is created by the constitution, and her title thereto, depends upon the mode of acquisition, and vests before the inventory can be filed.

The intention of the Legislature, was to make the filing of the inventory notice of the title of the wife, and not of her intention to assert her right.

Under our statute, the sale of the separate property of the wife, whether real or personal, must be in writing, signed and acknowledged in the manner pointed out by the statute, or it is void.

From the position, that the capacity of the wife as to her separate property is equal to that of the husband as to his separate property, grave doubts exist as to the validity of some of the provisions of our statute.

Defective deeds and acknowledgments of married women, cannot be reformed in chancery.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

The defendant was a corporation with a capital stock of three hundred thousand dollars, divided into shares of one hundred dollars each ; certificates of stock were duly issued from time to time ; and under the act of April 14th, 1853, the stock was transferable only on the books of the company. The same was required by the by-laws of the company, and stated upon the face of the certificates. In September, 1853, Virginia G. M. H. Sinclair, then sole and unmarried, became the owner of one hundred shares of the stock, and received from the company a certificate for the same ; she afterwards intermarried with Ferdinand Vassault, and has ever since remained his wife. On the eighth day of December, 1854, Mrs. Vassault and her husband

executed an endorsement upon said certificate, which endorsement is signed, " V. G. M. H. Vassault, Ferdinand Vassault," and purports to sell said stock to Robert Wells, for value received. There was no privy examination of the wife. Wells presented the certificate thus endorsed, to the officers of the company, and they, at his request, marked and retained the same as surrendered and cancelled, and permitted the stock to be entered on their books as transferred to Wells, and issued to him a certificate in his own name. No inventory of the separate property of Mrs. Vassault had been filed in the Recorder's office at the date of the transfer to Wells. On the eighteenth day of January, 1856, Mrs. Vassault sold the stock to Selover, the plaintiff, by instrument in writing, signed by Vassault and wife, and duly acknowledged by her before a notary public. Plaintiff presented said instrument to the company, and demanded a transfer of said stock to himself, which was refused, and plaintiff then brought this action to recover the marketable value of the stock. Judgment was given for plaintiff in the Twelfth District Court, and defendant appeals to this Court.

*Saunders & Hepburn*, for Appellant.

Acts of California Assembly, 1850, page 254, sections 3, 4, 5. Section first of the act is only descriptive of the particular sorts of property determined by its mode of acquisition, which in the capacity created by this statute may become the property of the wife. In order to have that capacity at the least as against third persons, it is just as indispensably necessary for her to comply with the peremptory requirements of sections 3, 4, 5, as it is for a married woman, seeking the capacity of a *feme sole* trader, to comply strictly with the statute creating that capacity.

Until the property is properly inventoried it is not separate property within the meaning of the act, and is subject to the disposition of the husband, which has been exercised in this case.

The wife may relinquish the benefit and enabling provisions of the law, and the purchaser, by this act and the omission to record, is assured of her intention not to claim the benefit of the law. By section 4 of the act, the inventory in the case of real estate, in several counties, is directed to be recorded in each.

This could not be intended merely as a means of notice for the benefit of third persons, because such titles would, in any event, have to be deraigned through her, which would disclose always title in her, and the mode of acquisition ; and the only intelligent purpose of the act must have been to impose upon the wife this means of indicating to the world her claim of exemption of the property as separate. She alone is required to sign the inventory, which is made the exclusive means of information

to third persons of her claim and intention to hold property under the provisions of the act.

Few, if any, of the Common Law States, except Texas, have similar statutes to ours. There the Courts have unhesitatingly inquired into the motives of the wife, and the circumstances surrounding the sale, in the absence of the privy examination and acknowledgment, and applied the equity rules ordinarily applicable to separate estates in equity. 8 Texas Rep. 397, Homack *v.* Homack.

A *feme covert*, as to her separate property, is in equity to be regarded as a *feme sole*. Jacquis *v.* The Methodist Episcopal Church, 17 Johns. Rep., 548; The Fireman's Insurance Co. of Albany *v.* Bay, 4 Barbour Sup. Ct. Rep., 413.

*Hoge & Wilson* for Respondent.

The stock stood on the books of the corporation, and in the certificate, in the name of V. G. M. Sinclair, the maiden name of the wife. The officers of the corporation knew it was hers, and hers separately. It was presented to Wells by her husband with the signature of her as a married woman, purporting to convey with her husband property standing still in her maiden name. Not only the corporation, but the mortgagee or pledgee, Wells, knew it was her separate property. Besides, otherwise she would not have signed it at all. The only reason why Vassault signs it at all, is because it was his wife's property. Here then, is full notice to all of her title.

The defendant cannot pretend ignorance of its own stockholder, or pretend ignorance of law, nor set up a statute intended to protect creditors. It violates its duty in permitting a voluntary transfer in a mode not permitted by law; and again violates its duty in not permitting a transfer when the proper voluntary assignment was presented.

Since writing the foregoing, we have found the case of Edrington *v.* Mayfield, 5 Texas R., 363, where it is held that the Legislature possesses no constitutional power to declare that the title of the wife to her separate property shall be divested for want of registration, nor for that reason be subjected to the debts of her husband or any other person. The want of registry only involves the proof of its being separate property in more difficulty, but any satisfactory proof is sufficient.

The question then is, can the separate property of the wife be transferred, or a lien or incumbrance be executed thereon by the act of the husband and wife, except in the mode indicated in section 6, Stat. 1850, p. 254.

The acknowledgment is a necessary part of the conveyance of a married woman, and is as essential as signing; without it the law presumes fraud and coercion. Mason *v.* Brock, 12 Ills. R., 276; Mariner *v.* Saunders, 5 Gilm., 113. In the language of this

case : " Without such acknowledgment the deed was absolutely void, and had no more vitality than a piece of blank paper. Only by virtue of such acknowledgment could the deed become operative ; its execution could be proved in no other possible way, and in no other way could she convey. The certificate of acknowledgment of a deed from a *feme covert* to convey her own lands, is as much an essential part of the execution of the deed as her seal or signature, and without it the law presumes that it was obtained with fraud or coercion."

Defective deeds and acknowledgments of married women are absolutely void, and cannot be reformed or remedied even in chancery. Carr *v.* Williams, 10 Ohio R., 309 ; Martin *v.* Dwelly, 6 Wend., 9–18 ; Butler *v.* Buckingham et al., 5 Day, 492 ; Hughes *v.* Lane, 11 Ills., 128–9 ; Blain *v.* Harrison, ib. 384 ; Agricultural Bank Miss. *v.* Rice, 4 Howard U. S. R., 225 ; Powell *v.* Monsell, 3 Mason R., 356 ; McFarlan v. Febiger et al., 6 and 7 Ohio, 337 ; R. Gilbert *v.* Stanley, 1 Hill, 125 ; Martin *v.* Mitchel, 2 Jac. & Walk., 424 ; Wright *v.* Buller, 2 Ves. Jr., 676 ; Jackson *v.* Stevens, 16 Johns., 114 ; Jackson *v.* Cairns, 20 ib., 303 ; Doe, ex dem. Depeyster *v.* Howland, 8 Cow., 277.

The purchaser of the share of stock is entitled to have the transfer made on the books and a new certificate on producing the evidence of the assignment to the officers of the corporation. Sargent *v.* Franklin Ins. Co., 8 Pick., 90–97 ; Ang. & Ames on Cor., § 567 ; U. S. *v.* Vaughn, 3 Binney, 397.

The acts of the officers of the corporation, transferring the stock to Wells, was without force as to the true owner, V. G. M. Vassault. Ang. & Ames on Cor., § 579 ; Sabin v. Bank of Woodstock, 21 Vermont R., 353.

It is the duty of the corporation not to permit a transfer of stock until satisfied of the party's authority to transfer. Case of forged power of attorney to transfer : *Held*, that the original owner's property in the stock had not changed by the transfer and new certificate ; that he was still the legal owner and entitled to the dividends. Transferable stock cannot be divested out of the proprietor by any act of the company without the proper authority of the stockholder. Ang. & Ames on Cor., § 582–3 ; Davis *v.* Bank of England, 2 Bing., 393 ; 3 Petersdorf 6 Ab., 410 ; State of Ohio *v.* Franklin Bank of Columbus, 10 Ohio, Repts., 98.

In Hollis and wife *v.* Francois et al., 5 Texas, 196, it was held : " The doctrine of Courts of Equity as to the powers of *femes covert* over their separate estates, are not recognized as rules by which the powers of *femes covert* over their separate estates under our statute, and their consequent liabilities, are to be determined. The statute has prescribed a special mode for the conveyance or transfer of the property, and unless this mode be pursued, the wife has no power to change her separate estate

18

except for necessaries for herself and family, and for expenses incurred for the benefit of her separate property."

This case cited and approved in Sampson et al. v. Williamson, 6 Texas R., 102.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

The points made by counsel, arise under the fourteenth section of the eleventh article of the Constitution of this State, and the act of the Legislature of the seventeenth of April, 1850, defining the rights of husband and wife. The questions involved are of no ordinary difficulty, and are important in their character.

At common law, the civil existence of the wife was merged in that of her husband; she could make no contract. But in equity she was treated as a *feme sole*, in respect to her separate property. In reference to the mere *mode* in which she could dispose of her separate estate, there has existed much difference of opinion. Chancellor Kent, in the great case of the Methodist Episcopal Church v. Jaques, (3 Johns. Chancery Rep., 78,) held that a married woman, as to her separate property, was not to be deemed a *feme sole*, but a *feme sole sub modo.* The case was reviewed in the Court of Errors, and the opinion of the chancellor was not sustained. It was settled in that case, that a *feme covert*, as to her separate property, was to be considered in equity, as a *feme sole*, with the absolute right of disposition incident to that state, without the consent of the trustee, unless specially restrained by the instrument under which she held her separate estate. It was also held that, though a particular mode was specifically pointed out, it would not prevent the wife from adopting any other mode of disposition, unless she was specially confined to that mode by the terms of the deed itself. (17 Johns. R., 548, 2 Kent's Comm., 166.) The same doctrine is held in the case of Vanderhien v. Mallory, (22 Wend., 526,) and also in the case of Ewing v. Smith. (3 Dess. R., 477).

The fourteenth section of the eleventh article of our constitution, is taken from the Constitution of Texas. There is, however, a clerical or typographical error in the published copy of our Constitution, in the use of the phrase " by marriage," instead of " by her, before marriage,"

The Texas Reports contain many cases very elaborately and ably discussed; some of these cases arose under the act of the Republic of January 20, 1840, and others under the Constitution of that State, and the act of the Legislature of March 13, 1848. (Hartley's Digest, pp. 734–8.) The provisions of the two acts are very different in some respects; and the provisions of both the Texas statutes are very different in some respects from our own statute.

The first question that properly arises, is this: What *capacity*

does the Constitution confer upon a married woman, in respect to her separate property, and what incidents necessarily belong to such capacity?

In the case of Edrington v. Mayfield, (5 Texas R., 363,) it was said by Chief Justice Hemphill, in delivering the opinion of the Court, that the capacity of the wife " to hold property, separate and apart from her husband, is as complete and perfect as that of the husband to hold in his own right, separate and apart from his wife. There is not the slightest difference in this particular, between their civil rights and capacities." The correctness of this position is further shown by the first section of our statute, which makes the capacity of husband and wife, as to their separate property, the same in both. The capacity of the wife to hold her separate property being equal to that of the husband, or of any other individual, the same incidents necessarily attach to her capacity, as to that of the husband. The Legislature, therefore, can pass no act impairing her rights, any more than the rights of the husband. They are both protected alike.

The counsel for the defendant assumes, substantially, that the capacity of the wife is created by the statute; and that she can only acquire that capacity by strictly complying with the provisions of the third, fourth, and fifth sections, in the same way that a *feme sole* trader does, by complying with the statute creating that capacity. And he insists, that until the property is properly inventoried, it is not separate property within the meaning of the act, and is subject to the disposition of the husband.

This position would seem to be incorrect. The capacity of the wife is created by the Constitution, and her title to her separate estate depends *alone* upon the *mode of its acquisition*, and vests in her before the inventory can be filed.

The counsel also insists, that " the wife may relinquish the benefits and enabling provisions of the law, and the purchaser by this act, and the omission to record, is assured of her intention not to claim the benefit of the law." There certainly is much plausibility in this position. In reference to real estate, the record would always show title *out* of the husband; and the diligent creditor or purchaser would be as well protected without the inventory as with it, if it was the intention of the statute only to give notice of the title of the wife, and not of her intention to avail herself of the enabling provisions of the statute. But this reasoning would not apply to the personal property of the wife, and the statute nowhere distinguishes between the two kinds of property, except in the fourth section, and this only for the purpose of requiring the inventory to be recorded in each county where the real estate is situated. That the inventory was intended to include both the real and personal property of the wife is clear; not only because the statute makes no distinc-

tion between the two, but because the inventory must, in all cases, be recorded in the county in which the parties reside. And although the fourth section may require that to be done which is not strictly necessary for the protection of others, still, the language of the statute would seem to show the intention of the Legislature to make the filing of the inventory *notice*, not of the wife's intention to continue to assert her right, but of the claim itself; in other words, it was intended to give notice of what property the wife claimed to have owned before marriage, or acquired afterwards by gift, bequest, or devise. And the fifth section is express, that the filing of the inventory shall be "notice of the title of the wife," and the effect of this notice is, that all property belonging to her, included in the inventory, shall be exempt from seizure or execution for the debts of the husband."

Now, whether a failure to file the inventory, would make a sale by the husband alone of the wife's personal property valid in the hands of an innocent purchaser, is a question not involved in this case, as both Wells and the defendant knew that the stock was the separate property of the wife. The mistake they made was one of law and not of fact.

From the position that the capacity of the wife, as to her separate property, is equal to that of the husband, as to his separate property, very grave doubts may exist as to the validity of some of the provisions of our statute. In the case cited from 5 Texas Rep., 363, it was said by the Chief Justice, that "the Legislature possesses no constitutional power, to declare that the title of the wife to her property shall be divested for want of registration, nor, for that reason, it shall be subjected to the debts of the husband, or of any other person whomsoever."

A more serious doubt may exist, it would seem, as to the validity of the ninth section, the provisions of which give the husband the absolute power of disposition of the common property, and make the rents and profits of the separate property, of both husband and wife common property. The substance of this section is to give all the rents and profits of the wife's separate property to the husband, leaving her only a reversionary interest. The value of property consists mostly in the rents and profits; and when by the act, the husband has the absolute power of disposition of these rents and profits, without the consent of the wife, what becomes of her right of property in her separate estate during the coverture? And it may also be doubted whether that portion of the sixth section, which requires the signature of the husband to make a valid sale, or to create an incumbrance upon the separate property, can be sustained. She is given no power by law over the will of her husband, and to make his consent necessary to the sale and use of that which is exclusively hers, would seem inconsistent with the capacity conferred upon her by the Constitution itself. But as these ques-

tions do not necessarily arise in this case, no express decision is required, and none made.

The next question that arises in this case is, whether a valid sale of the personal property of the wife can only be made by her in the mode provided in the sixth section of our statute.

The main object of that section is the protection of the wife against the influence of the husband, and to secure her perfect freedom of will in the disposition of her separate property; and as that is the *end* to be attained, was it the intention of the Legislature simply to provide a more easy and stable mode of proof as to the wife's freedom of will, or was it also the intention to make the privy examination of the wife the *only mode* of ascertaining that fact, and the certificate of the officer the *only proof* of it? It certainly may be said, with much apparent reason, that the protection of the wife was the main intent—that her freedom of will must exist *in fact*, to constitute a valid transfer —that allowing her to undergo this privy examination gives protection, as well to the purchaser as to her, for it furnishes him with a mode of proof conclusive in its character, and not liable to be lost, like oral testimony—that protection to the purchaser is for her advantage, as it enables her to sell the more readily— and that the main intent of the statute would be better accomplished by allowing her to sell in other modes, as well as in the mode provided.

The case of Wo Mock v. Wo Mock, 8 Texas Rep., 397, is referred to by the counsel for the defendant, and has an important bearing upon this case. The bill of sale of a slave, the separate property of the wife, was executed in 1850, by Wo Mock and wife, but not acknowledged by her in the manner prescribed by the statute of that State, passed in 1846. The first section of the act specifies the mode in which the separate property of the wife may be conveyed, and requiring her separate examination, and then provides " that such deed or conveyance, so certified, shall pass all the right, title, and interest, which the husband and wife, or either of them, may have in and to the property therein conveyed." Hartley's Digest, p. 131, Art. 174.

This statute nowhere restrains the wife to the very mode specified; it only declares a conveyance made in that mode to be sufficient. And this was the argument of counsel, referring to the case of Jaques v. the Methodist Episcopal Church, 17 Johns. Rep., 548, and in delivering the opinion of the Court, the Chief Justice says :

" The statute which prescribes the mode of conveying the wife's property, does not declare absolutely void any other mode of conveyance. It seems, from its terms, to have had but one object in view, and that was to secure the freedom of will and action on the part of the married woman. Now," continues he, " although there was no privy examination in this case, yet the

facts show that there was the most perfect freedom on the part of the wife."

This opinion seems to be in conflict with the previous case of Callahan v. Patterson, 4 Texas Rep., 61, where it was expressly held that the privy examination of the wife, was indispensable to the conveyance of her separate property.

The result of the leading cases seems to be this : that in equity, unless the instrument under which the wife holds her separate property—and, in Texas, the statute contains "negative words, restraining her power of disposition, except in the very mode pointed out"—she may adopt any other mode; but in case such negative words are used, then she can only convey in the specific mode provided.

Our statute provides, that "no sale or other alienation of any part of the wife's separate property can be made, nor any lien or incumbrance created thereon," unless by writing, signed and acknowledged in the manner pointed out by the statute itself. And while the statute does not say, in express terms, that all sales and incumbrances, except those made in the mode specified, shall be void, it does use negative words, conveying substantially the same meaning. And that the statute intended to embrace both the real and personal property of the wife, would seem to admit of but little doubt; the language is so broad as to include all; the intent of the act is to include both the real and personal estate in the inventory, and also in the instrument of sale, and if the sixth section does not embrace the personal property of the wife, then it would be unnecessary, as the statute concerning conveyances provides the mode in which a wife may convey her real estate.

There was certainly good reason for securing the freedom of the wife's will and action, as well in respect to her personal as real estate. The increasing importance of the personalty in modern times, renders this the more necessary. It is true, the statute imposes troublesome conditions upon the wife, but they are intended for her benefit; she can to some extent avoid the inconvenience of the privy examination, in the sale of every article of personal property, by executing a power of attorney.

It seems to have been the intention of our statute to provide a mode of alienation, at once simple and conclusive, and which would equally protect the wife and the purchaser. And if the Courts should sustain sales or incumbrances, made or created in any other mode than the one provided, it would soon destroy the simplicity and efficiency of the rule itself. We should soon be called upon to decide that the privy examination of a married woman was unnecessary to convey her real estate, for the same reason would apply in the one case as in the other, except that the language of the sixth section of the act defining the rights

of husband and wife, is in terms stronger than that of the statute concerning conveyances.

That the acknowledgment is a necessary part of the conveyance of the real estate of a married woman, there can be no doubt. Up to the last moment she may retract the execution of the deed. Mason v. Brock, 12 Ills., R. 276; and Marvin v. Saunders, 5 Gil., 113. In the last case, the Court says: " Without such acknowledgement, the deed was absolutely void." Defective deeds and acknowledgements of married women cannot be reformed, even in chancery.

The judgment of the Court below is therefore affirmed.