MARY A. DOW *v.* THE GOULD AND CURRY SILVER MINING COMPANY.

SEPARATE PROPERTY OF MARRIED WOMAN.—The word " separate " as applied to a married woman's property in section fourteen of Article XI of the Constitution, neither enlarges nor limits her right to the property mentioned, but merely distinguishes it from her common property.

CONVEYANCE OF WIFE'S SEPARATE PROPERTY.—The phrase in section fourteen, Article XI, of the Constitution, " and laws shall be passed more clearly defining

Points decided.

the rights of the wife in relation ※ ※ ※ to her separate property," cannot be construed as referring to the mode and form in which the wife shall convey her separate property. Said phrase refers to the disabilities under which the wife labored at common law by reason of coverture.

WIFE'S DEED OF SEPARATE PROPERTY. — Section six of the Act defining the rights of husband and wife, requiring a deed conveying the separate property of the wife to be signed by the husband as well as the wife, is not unconstitutional.

DENIALS IN AN ANSWER.—In an action against a corporation to recover dividends which have accrued on its stock, if the plaintiff avers "that from a date named she was, has been, and still is, the owner in her own right and as her separate property" of the stock, the answer raises an issue if it denies that at the date named "the plaintiff was, has since been, or still is, the owner in her own right and as her separate property" of the stock. The qualification of the denial by the words "in her own right and as her separate property" are mere surplusage.

RIGHT TO RECOVER DIVIDENDS ON STOCK.—The plaintiff, in order to recover from a corporation the dividends on its stock, must be the owner of the stock at the time the dividends accrued. Mere possession of the stock or a special property therein is not sufficient.

NONSUIT.— In considering the correctness of the ruling of the Court below, in granting a nonsuit, the Supreme Court will consider as proven every fact which the evidence tended to prove, and which was essential to be proven, to entitle the plaintiff to recover.

PLACE OF RESIDENCE.—A person who is domiciled in and has become a resident of a place, does not lose that residence by going to and stopping at another place, not to reside there permanently, but only for a limited time.

DOMICIL OF WIFE.—The domicil of the husband is also the domicil of the wife.

RIGHT OF MARRIED WOMAN TO HOLD PROPERTY.—The capacity of a married woman domiciled and residing in this State, to acquire, hold, and enjoy property, is regulated during such residence by the laws of this State, and not by the laws of the State where the marriage contract was entered into.

A GIFT.—A gift is not perfect, nor does any interest pass to the proposed donee, until there has been a delivery by the donor and an acceptance by the donee.

GIFT FROM HUSBAND TO WIFE.— Under the Constitution and laws of this State the wife has the capacity to take and hold in her own name and right, by gift from her husband, either real or personal property.

LAW GOVERNING CONTRACT OF SALE.—If a contract for the sale and assignment of certificates of stock of a corporation is entered into in another State, but the certificates are afterwards delivered in this State, the legality of the sale and assignment must be determined by the laws of this State.

POWER OF ATTORNEY OF MARRIED WOMAN.—Prior to the passage of the Act of April 3d, 1863, a married woman was incompetent to execute a power of attorney. The Act of April 3d, 1863, had a retroactive effect, and validated powers of attorney before then executed by married women, in which the husband joined, and also validated all conveyances of the wife's property theretofore made under such powers.

IDEM.—A power of attorney of a married woman is void, unless the husband join in the execution of the same by affixing his signature to the instrument in writing.

IDEM.—The Act of April 3d, 1863, did not validate powers of attorney theretofore made by married women, but to which the husband did not affix his signature in writing.

SALE OF MARRIED WOMAN'S PROPERTY.—A sale of a married woman's separate property, made by her attorney in fact in her name, under a power in the execution of which the husband did not join by affixing his signature in writing, is void, and if made before the passage of the Act of April 3d, 1863, was not validated by that Act.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendant is a corporation, organized under the laws of the State of California for mining purposes. The mining operations of the defendant are carried on in what is called the Comstock Lode, in the now State, but in 1861 the Territory of Nevada.

The plaintiff avers, that December 1st, 1861, she was, since has been, and still is, the owner of forty-eight shares of the capital stock of the company, and that since said date the defendant has earned profits on its business of mining, and has declared dividends on said forty-eight shares of stock, amounting to the sum of twenty-eight thousand one hundred and eighty-eight dollars,. which sum has been received by defendant in trust for and. to the use of plaintiff; and that on the 18th day of November, 1864, plaintiff demanded of defendant payment to her of the dividends, and defendant refused to pay the same.

The answer denied that plaintiff owned the stock, and that defendant had received the money in trust for or to the use of plaintiff.

On the trial James G. Dow was called for plaintiff, and testified that he was her husband, and was married to her in Boston, Massachusetts, over twenty-seven years ago. The defendant, under the call of plaintiff, then produced five certificates of stock, numbered eighty-one, eighty-two, eighty-three, eighty-four, and ninety-one, dated August 11th, 1860, in the aggregate forty-eight shares of its capital stock. The entire capital stock consisted of four thousand eight hundred shares, of five hundred dollars each. The certificates produced were issued to the plaintiff. On each of the certificates

was the following indorsement, except that on number ninety-one was for only eight shares :

"For value received, I do hereby sell and assign unto E. H. Parker, ten shares of the capital stock of the within company, standing in my name on its books. And I constitute and appoint J. C. L. Wadsworth my lawful attorney, irrevocable for me and in my name and stead, to transfer the above number of shares, and to sign and execute all necessary papers to that end, hereby ratifying all lawful acts of my said attorney done by virtue hereof.

"Witness my hand, this 7th day of December, A. D. 1861.

"Mrs. M. A. DOW.

"By her attorney in fact, JAMES G. DOW.

"Witness : JAMES A. BUTTERS."

The power of attorney from plaintiff to her husband, under which the sale of the stock was made, was dated September 28th, 1861, and was signed by the wife alone.

The witness then said that he had given the certificates to his wife in consideration of money owned by her before her marriage, which he had received of her. Defendant here admitted that the dividends which had accrued on the stock were correctly stated in the complaint, and that the same had been paid to the parties claiming to have purchased the same from plaintiff.

Counsel for defendant then showed the witness the power of attorney from plaintiff to her husband, and offered the same in evidence. Plaintiff's counsel objected to its admission in evidence, because it was executed by the wife alone without her husband. The Court overruled the objection, and plaintiff's counsel excepted. The witness then said that when the certificates of stock were issued he ordered them to be delivered to his wife, and did not see them until he obtained them a short time before the sale to Parker. Plaintiff then rested.

The defendant's counsel moved for a nonsuit on the following grounds :

1st. That by the laws of Massachusetts married women have no separate property.

2d. There has been an appropriation of the dividends on the stock by the written consent of the plaintiff.

3d. Dow lived in Nevada, where the common law prevailed.

4th. The power of attorney is good to transfer the stock.

The Court granted the motion, and plaintiff, by her attorneys, excepted. Plaintiff appealed.

*J. McM. Shafter,* for Appellant. Is the requirement of section six of the Act defining the rights of husband and wife, that the husband shall join in the execution of conveyances of the wife's separate property, constitutional ? Property is the highest right a man can have to anything. The question is whether the words " separate property " in section fourteen of Article XI of the Constitution are to be regarded as expressive of a right absolute as to title, estate, possession, and ·power of disposition, uninfluenced by considerations relative either to the nature of the thing, the character and condition of the person owning, or the form in which the right of disposition is to be exercised. We think this question must be answered in the negative, and that while the Government is prohibited from destroying or transferring the right of property, except in a given governmental exigency, it may, to any reasonable extent, provide limitations upon the power of disposition, either as to the forms necessary to be observed, or as to the persons conveying. The State possesses, and has always exercised, absolute control over the *forms* by which *property* has been either acquired or alienated. This provision as to acknowledgment does not qualify her right to the possession of the property, nor her right to the rents and profits, but simply her power to convey. To hold that the statute in question is unconstitutional, must logically lead to an entire overturn of every limitation upon the power of alienation, and of all laws relative to the incapacity of *femes covert*, and of all distinctions between them and other persons. The condition

of the marital relation which makes the wife independent and apart from her husband, even as to her separate property, and the improbability of such an intention, are well shown in *Walker* v. *Reamy*, 36 Penn. S. R. 410. The ludicrous and fatal consequences (fatal to marital relations) which would ensue from holding that "separate property" is to be taken in its largest and unaided interpretation, is well shown in that case. *Callahan* v. *Patterson*, 4 Tex. 61, 12 Ill. 276, 5 Gil. 113, all ratify statutes restricting the wife's power over her separate estate—the constitutional provision in Texas being the same as ours. In the following cases the principles of the statute in question underlie the decision : *Snyder* v. *Webb*, 3 Cal. 83 ; *Rowe* v. *Kohler*, 4 Cal. 285 ; *Poole* v. *Gerrard*, 6 Cal. 71 ; *Kendall* v. *Miller*, 9 Cal. 591 ; *Luning* v. *Brady*, 9 Cal. 265 ; *Sharer* v. *Bear River Co.* 10 Cal. 396 ; *Pease* v. *Barbiers*, 10 Cal. 436 ; *Dickenson* v. *Owen*, 11 Cal. 71 ; *Bours* v. *Zachariah*, 11 Cal. 281 ; *George* v. *Ranson*, 14 Cal. 660 ; 15 Cal. 342 ; *Mott* v. *Smith*, 19 Cal. 533 ; *Camden* v. *Vail*, 23 Cal. 633 ; 24 Cal. 392 ; *Maclay* v. *Love*, 25 Cal. 367. The stock was never transferred by Mrs. Dow, and is, therefore, still her property. The so-called power of attorney was void. (*Snyder* v. *Sponable*, 1 Hill, 567 ; *Mott* v. *Smith*, 16 Cal. 556 ; *Sumner* v. *Conant*, 10 Vt. 1.) The plaintiff did not sign or acknowledge the instrument of transfer. The transfer was void. (*Selover* v. *Russian Com. Co.*, 7 Cal. 273 ; *Davis* v. *Bank of England*, 2 Bingh, 393.) The power of attorney was not rendered valid by the Act of 1863. (Statutes 1863, p. 165.) That Act professes to cure all conveyances under powers of attorney made in compliance with that Act. This power of attorney was not in compliance with that Act, for the husband *did not join in the instrument*. The Legislature has no power to make valid that which is void. No one can be deprived of his property without due process of law. There is no presumption that the stock was the common property of husband and wife. The defendant certifies that it is *her* property, and is estopped from denying it. Even if it were *prima facie* common property, such presumption may

be rebutted by proof that the wife acquired it by gift, or that it is the proceeds of her separate property. (*Ramsdell* v. *Fuller,* 28 Cal. 37 ; *Meyer* v. *Kinzer,* 12 Cal. 252.)

*C. Temple Emmett,* and *Delos Lake,* for Respondent. The appellant objects that the power of attorney is defective because the husband has not signed it. The power of attorney is to the husband himself. The object of the statute, as claimed by the appellant, is perhaps more effectually attained when the power is given to the husband, than when the husband joins with the wife in conferring the power on a stranger. But the real object of the statute in requiring the husband to join in the execution of instruments disposing of the wife's separate property was to show his assent to the disposition. Can it with any reason be pretended that in the instrument in question the husband's assent is not abundantly manifested ? In *Ingoldsby* v. *Juan,* 12 Cal. 564, the husband was no party to nor did he join in the instrument; but after the wife executed it the husband in a separate instrument signed his approval. And this was held a compliance with the statute. But the appellant claims that the Act of the Legislature of 1863 (p. 165) "is at least a legislative declaration that up to its date the power to make such a power of attorney did not exist." We understand this to mean that prior to the passage of the Act married women could not dispose of their property by power of attorney. But if any doubt be entertained upon that point, we apprehend the fourth section of the Act renders the power in question all sufficient. We maintain that section six of the Act defining the rights of husband and wife is unconstitutional. What is the meaning and effect of section fourteen of Article XI of the Constitution ? Does it confer upon married women simply a limited right to the use and enjoyment of their separate property, or does it preserve to them the same powers over their property after marriage as are possessed by *femes sole ?* Since the year 1740 it has been almost universally held that a "*feme covert,* with respect to her separate estate, is to be regarded in a Court of equity as

a *feme sole*, and may dispose of her property without the consent or concurrence of her trustee, unless she is specially restrained by the instrument under which she acquires her separate estate." (*Jaques* v. *Methodist Episcopal Church*, 17 Johns. 578, marginal paging; *American Home Missionary Society* v. *Wadhams*, 10 Bárb. 602; *Yale* v. *Dederer*, 18 N. Y. 4 Smith, 269.) The instant before marriage the man and the woman, with respect to their separate estate, stand upon an equal footing. The fact of marriage, under the harsh rule of the common law, would destroy this equality, and would place the property of the wife at the mercy of the husband. The Constitution, however, intervenes, and declares that that which was separate before marriage shall remain separate after marriage; in other words, that the wife shall continue to own her property *separately*, namely, in the same manner as she owned it when a *feme sole*. The ninth section of the Act defining the rights of husband and wife provides that "the rents and profits of the separate estate of either husband or wife shall be deemed common property." (1 Hittell's General Laws of Cal., Art. 3,571.) This provision has been declared in conflict with the identical paragraph of the Constitution under discussion. (*George* v. *Ransom*, 15 Cal. 323.) The wife's right of property in her separate estate after coverture is coextensive with that which she possessed as a *feme sole*. (*Lewis et al.* v. *Johns et al.*, 24 Cal. 103.) We concede unhesitatingly that it is quite competent for the Legislature to prescribe the form in which conveyances shall be made, but we deny its power to restrict or prevent the alienation of property. Laws have been framed providing in what manner real property shall be conveyed, what steps shall precede the acknowledgment and recording of conveyances—that certain contracts, or some note or memorandum thereof, shall be in writing, subscribed by the parties to be charged thereby, and containing, in short, innumerable specifications of the mode in which the agreements of parties shall be perfected. These laws are valid, because they act upon the *form*, and not upon

the *right;* they do not obstruct the will, but specify the manner in which it shall be expressed.

By the Court, Rhodes, J. :

Is that provision of section six of the Act of 1850, defining the rights of husband and wife, which is in these words : " But no sale or other alienation of any part of such property " (the separate property of the wife) "can be made, nor can any lien or incumbrance be created thereon, unless by an instrument in writing, signed by the husband and wife," repugnant to the Constitution of this State, in the respect that it requires the husband to join in the execution of the instrument in writing, in order to pass the wife's title to her separate property ? It is claimed that it conflicts with section fourteen of Article XI of the Constitution. The section is as follows : " All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, shall· be separate property, and laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

There can be no question about the meaning of the first clause of the section, when considered by itself. It is thereby declared that all property owned or claimed by the wife at the time of her marriage shall remain her property after the marriage; and that all property acquired by her after marriage by gift, devise, or descent, shall also remain her property, notwithstanding her marriage. In *Jackson* v. *Housel,* 17 J. R. 283, Mr. Chief Justice Spencer, commenting with approval upon the language of Mr. Chief Justice Tilghman, in *Morrison* v. *Semple,* says: " Property is defined to be the highest right which a man can have to anything, being used for that right which one hath to lands or tenements, goods or chattels, which no way depend on another man's courtesy." Bouvier defines property as " the right and interest a man has

in lands and chattels. It is the right to enjoy and dispose of certain things in the most absolute manner, as he pleases, provided he makes no use of them prohibited by law." This is a fair summary of the authorities he cites, and perhaps of all the cases on that point. The term property is of the most comprehensive signification, and no word of qualification can enlarge its meaning, though it may limit it. The word " separate," as used in that section, neither enlarges nor limits thè right of the married woman in or to the property mentioned in that branch of the section, but it serves merely to distinguish such property from other property in which she is interested, which is also mentioned in the section—the common property of both husband and wife.

Had the constitutional provision ended with the first clause there would be no difficulty in ascertaining its meaning. There would be no room for doubt. , Having ascertained the meaning of the term separate property, it would inevitably follow that in respect to such property a married woman would remain as a *feme sole,* and the Legislature would possess no more power in the one case than the other to impose conditions, clogs, limitations or restrictious upon the right to use, enjoy, incumber or alienate the property. In the one case as well as the other a condition imposed by the Legislature upon the power of alienation, requiring the signature of another person to the instrument of sale or conveyance to be procured in order to enable her conveyance to pass the title to the property, would be void. But the difficulty arises when that clause is read in connection with the second clause of the section. The Legislature is thereby directed to pass laws "more clearly defining the right of the wife in relation * * * to her separate property."

It is contended on behalf of the defendant, that this clause does not operate as a limitation or qualification of the first clause nor confer upon the Legislature the power to make any limitation or qualification of the right or power vested in the wife by the first clause, but that it relates only to the *mode and form* in which she may be required by law to proceed in

conveying her separate property—that the laws required to
be passed, like the Statute of Frauds, are such as specify the
manner in which she shall act, but do not obstruct her will
in passing her right or title.   The whole argument proceeds
on the theory that the rights of the wife are absolutely fixed
and determined by the first clause, and that the subsequent
clause does not in any manner limit or qualify such rights.

On the other hand, it is insisted that the second clause
qualifies the first, and that reading the two together, the
ownership or title of the separate property of the wife is left
or vested in her, and that all besides the matter of ownership
is committed to the control and discretion of the Legislature.

To define, as the word is used in the statutes and Constitu-
tion, signifies to prescribe, to fix the bounds, to establish and
declare the limits of, any right, power, duty, etc.   The laws
required to be passed are such as will more clearly define her
rights.   Can it be said with any show of reason, that laws
which prescribe the forms in which a married woman must
convey, incumber or otherwise affect her property, fix the
bounds or establish and declare the limits of her rights?
Whether the law prescribes that she shall convey her prop-
erty by deed, or by an instrument in writing, or by a verbal
sale, her rights in and to her property remain wholly unaf-
fected by such regulations.   No argument is needed to show
that statutes requiring that real estate shall be conveyed by
deed, or that the deed shall be acknowledged before certain
officers, or shall be recorded, and the like, do not limit,
qualify or affect the title or the property rights of the owner.
Accepting the defendant's construction, that by this section
the entire title, use, enjoyment and rights in and to the prop-
erty is vested and affirmed in the wife, the constitutional
grant of authority to the Legislature to prescribe the form in
which she must convey or otherwise affect the property,
would be idle and useless, for the Legislature possessed such
authority in respect to that property, in common with all
other property within the State.   Nor is there anything in
the terms of the provision declaring the rights of the wife,

that either directly or by implication negatives or denies such authority to the Legislature, so as to render a grant or recognition by the Constitution of such authority necessary. In our opinion the terms and language of the section will not permit the phrase " and laws shall be passed more clearly defining the rights of the wife," to be construed so as to read : " And laws shall be passed more clearly defining the mode and form in which the wife shall convey or otherwise affect " her separate property.

It will readily be seen, on an examination of the Constitution, that its leading principles and most of its details have a common law origin. It was framed upon the general model of the Constitutions of the older States—the American form of State government, which by a series of amendments has been brought to the present condition of excellence. The framers of those Constitutions were versed in the principles of the common law, and had been trained to regard it as the rule of decision ; and in fact the common law was adopted by the Constitutions of several of the States, so far as it was applicable to the existing state of things and not inconsistent with their Constitutions, and in other States it was adopted by statute as the law of the land. It was held in the same estimation by the framers of our Constitution, and although the laws in force at the time of the adoption of the Constitution were continued in force until altered or repealed by the Legislature, the common law formed the basis of almost every right secured and remedy provided by the Constitution. The only marked exception is found in the section under consideration, providing for the separate property of the wife and the common property of both husband and wife. And the first Legislature, in harmony with the provisions of the Constitution and the views of its framers, adopted the common law as the rule of decision, so far as it was not repugnant to or inconsistent with the Federal Constitution or the Constitution or laws of the State.

In order to give a proper construction to this section it must be looked at from the standpoint occupied by the framers

of the Constitution, that of the common law. By the use of the terms "separate property" and "common property"— terms of well known signification both in the laws then in force and in the Constitution of Texas—and by declaring what should compose the separate property of the wife, it is true they swept out of existence many of the disabilities of the wife and some of the most important rights of the husband, growing out of the marriage relation at common law, yet in all other respects they looked to the common law as affording the measure of the rights, powers and disabilities incident to the relation of husband and wife. According to the rules of the common law the wife was under a disability to contract or to bring an action. Her personal property vested in her husband, and the marriage gave him the right to manage her real estate and enjoy its profits during their joint lives, and vested in him an estate by the courtesy in her real estate, in certain cases. The framers of the Constitution being dissatisfied with this rule, designed to work a change by means of the section under discussion, but they neither intended to abrogate all the marital rights of the husband nor to remove all the disabilities of the wife in respect to her property. If such had been the case—if it had been intended to confer upon her all the rights and powers in respect to property possessed by a *feme sole*—the section would have ended with its first clause, the remaining clauses being as useless and void of all sensible purpose as would have been a reaffirmation, as to a married woman, of the first section of the declaration of rights. Some force, some object, some purpose must be attributed to the portion of the section succeeding the first clause, for we cannot presume, and would not be justified in saying, they are a meaningless string of words. The change intended to be made in the common law rules in regard to the property of the wife went to this extent: The title, the ownership, the use and enjoyment of the property of the wife, held or acquired as mentioned in the section, were vested in her,

81

and the matters relating to disabilities arising from coverture were left to the discretion of the Legislature.

The laws required to be passed are such as will more clearly define the rights of the wife in relation to her separate property. To define, as used in statutes, usually signifies to prescribe. The Act defining the rights of husband and wife, the Act defining the time of commencing civil actions, the Act defining the duties of County Clerks, the Act to create a Board of Supervisors and define their duties and powers, are familiar instances in which the word is used in that sense; and no instance occurs to us in which it is used in a statute with a different meaning. Attributing to the section the purpose claimed for it by the defendant—that of making the wife a *feme sole* as to her separate property, there would remain no right of the wife in relation to her separate property to be prescribed by law. A mere description or enumeration of the rights of a *feme sole*, as we have seen, would be useless as well as unusual, and provisions respecting the forms of her conveyances, etc., do not relate to her rights. But if the ownership of the wife, as declared by the first clause of the section, is brought into juxtaposition with the disabilities incident to coverture at common law, it will be seen that there are matters of right relating to the property which it is proper, if not necessary, should be prescribed by law. One of the most obvious of these is in respect to the age at which she shall be deemed competent to contract in relation to her property. Another relates to her right to sue, whether in her own name or the joint names of herself and her husband. There are many other quite important subjects of legislation touching her estate, such as concern her liability upon express. or implied contracts, her liability to actions for the specific performance of her contracts, her responsibility for the maintenance of her family, her capacity to make a will, and the like. If those and many other matters which affect her rights in relation to her property are proper subjects of legislative control, within the meaning of the second clause of the section, and are important or necessary, in view of the usual

disabilities incident to coverture, why may not provision be made requiring the assent of her husband to her contracts of sale? Would a provision of that character be any more or less a law defining her rights in relation to her property than any one of those before mentioned? An infant possesses the ownership of his estate, and yet it is not doubted that it is competent to the Legislature, considering the disability of infancy at common law, to provide that his guardian shall be entitled to its management and possess the power of sale, under the direction of the Probate Court. And this is true, notwithstanding the constitutional declaration of the inalienable right, pertaining alike to all persons, of " acquiring, possessing and protecting property."

The purpose of the provision requiring the assent of the husband to the conveyance of the wife, it is admitted on all hands, is not to confer upon him any right of property—any ownership; but it is to guard and protect the interests of the wife. But it is objected that the husband may without reason, and in pure obstinacy, refuse to join his wife in the execution of the conveyance when the contemplated sale is both proper and necessary. The answer is, the statute may not have gone far enough to meet such a contingency, as it well might have done, and perhaps the Courts, though they have not yet done so, are able to administer the proper remedy. The Legislature has provided for one case in which the concurrence of the husband is presumptively not procurable—the case where the husband, at the time of the execution of the conveyance by the wife is, and for one year next preceding was, a non-resident of this State; and provision might also be made for the case first mentioned and for other contingencies, as where the husband has absconded or is confined in prison under final process. But the fact that provision has not been made for all possible contingencies, does not render the statute unconstitutional. The Act relating to guardians provides in substance that the guardian shall have the management of the estate of his ward during his minority, and shall dispose of such portions of his personal or real estate as may

be necessary to pay the debts of the ward and furnish him with a suitable support; but the statute has failed to provide for the management or disposition of his property in case no one will accept the appointment as guardian.

An argument may legitimately be drawn from the manner in which the subject matters committed to the legislative control are coupled in the section of the Constitution. Laws are to be passed more clearly defining the rights of the wife "in relation as well to her separate property as to that held in common with her husband." It is not expressly declared what right or title she shall possess in the common property, nor is common property defined; but at the time of the formation of the Constitution, it was a term of well known signification in the laws then in force, and a right on the wife's part in property of that character was recognized by the Constitution. No distinction between the nature of the rights to be defined as they may relate to either of the two classes of property is indicated. The language does not tend to show that while as to the common property the Legislature may prescribe her rights, as to her separate property, authority was given to prescribe only matters of form. But without going to the length of saying that by the recognition of the right of the wife in the common property her title became fixed beyond the reach of legislative alteration, it is sufficient to say that it is incredible that the framers of the Constitution, in committing to the Legislature the same authority in the same terms over two subjects having an intimate relation, should have intended that the Legislature should exercise plenary control over the one, and only the most limited and almost immaterial power over the other.

The question of the constitutionality of that provision of section six of the statute requiring the instrument by which the wife's separate property is sold, or otherwise alienated, or subjected to a lien or incumbrance, to be signed by the husband, has not been directly passed upon by this Court. It was expressly reserved in *Selover* v. *Russian American Company*, 7 Cal. 274, and *Maclay* v. *Love*, 25 Cal. 382. There

are, however, many cases in which the disabilities attending coverture as prescribed by the statute are recognized, and either the case or some important point involved in it is made to turn upon the compliance with the requirements of section six. Thus, in *Mott* v. *Smith*, 16 Cal. 556, the plaintiff offered in evidence a power of attorney executed by a married woman and her husband, and two conveyances purporting to be executed under the power, the one from the husband and the other from the wife; and Mr. Chief Justice Field, who delivered the opinion of the Court, said : " The deeds purporting to be executed by the witness under the alleged power were upon their face mere nullities. A married woman cannot invest another with a power to sell any interest which she possesses in real estate, in the absence of any statute to that effect, and there is no such statute in this State. To the efficacy of a conveyance by a married woman, it is essential that she join with her husband in its execution, and make the statutory acknowledgment. (See, also, *Barrett* v. *Tewksbury*, 9 Cal. 13 ; *Morrison* v. *Wilson*, 13 Cal. 494 ; *Dentzell* v. *Waldie*, 30 Cal. 138.) The right to sell and convey property through the intervention of an agent or attorney in fact is a right pertaining to all persons not laboring under a disability, and the denial to the wife, as in that case, of power to convey her property in that mode, because the statute has not conferred it, is at least an indirect affirmance of the authority of the Legislature to pass the sixth section as it then stood, and this clearly shows that the Court were of the opinion that a *feme covert* was not in all respects a *feme sole* as to her separate property.

It is worthy of observation that this statute was passed at the first session of the Legislature after the adoption of the Constitution ; and that it remained in force up to 1857, when a doubt was expressed as to the validity of the provision in question in *Selover* v. *Am. Rus. Com. Co.*, 7 Cal. 272 ; and that it was still suffered to continue in force up to 1862, when the section was amended by enlarging the capacity of the wife to contract, but still requiring the signature of the husband to

give validity to the instruments in writing executed by the wife affecting her real estate, and requiring him to join the wife in the sale, assignment and transfer of her personal property, except such property as she was authorized by law to sell, assign or transfer as a *feme sole*. The doctrine of the incapacity of the wife to execute a power of attorney for the conveyance of her property, as announced in *Mott* v. *Smith*, remained unquestioned up to the passage of the Act of 1862, amendatory of section six, which gave her the requisite capacity for that purpose, but still requiring the signature of her husband; and in 1863 a further Act was passed authorizing her, acting jointly with her husband, to execute powers of attorney. And while these facts do not amount to authority in support of the views advanced, it must be admitted that the acquiescence manifested by successive Legislatures from the foundation of the State Government to the present time, like that exhibited by the Courts and the bar by their omissions to raise or pass upon the question, tends strongly to show that the provision in question has become a rule of property which it would now be dangerous to disturb.

The Constitution of Texas, as before remarked, contains a provision in the same words as that of our own, and the section of the statute under consideration is copied from the statute of Texas, but no case is cited from the Texas reports directly to the point in controversy. There are many cases to be found in those reports, in which other clauses of the statute than the one requiring the husband to join in the conveyances, etc., made by the wife are considered; and it is held that a compliance therewith is necessary; and no doubt is expressed as to the constitutionality of any clause of the section. (*Callaban* v. *Patterson*, 4 Texas, 61; *Hallis* v. *Francois*, 5 Id. 195; *Wohock* v. *Wohock*, 8 Id. 397.) In *Edrington* v. *Mayfield*, 5 Id. 363, the provision of the statute requiring the registration of the separate property of the wife was before the Court. Mr. Chief Justice Hemphill, in discussing the capacity of the wife, said: " Her capacity to hold property separate and apart from her husband is as complete and per-

fect as that of the husband to hold in his own right separate and apart from his wife. There is none, not the slightest difference in this particular between their civil rights and capacities. The right of the *feme covert* to hold her separate estate is as perfect as if she were a *feme sole.* She loses many of her civil rights by marriage, but her power to take and hold separate property is not impaired by force of the coverture. It is true that the law has deemed it sound policy, and beneficial to the interests of the wife, that certain onerous restrictions should be imposed upon her ability to deal with her estate as a *feme sole*, but this does not affect the right to hold the property, but rather the reverse. They were designed to protect that right and to preserve the wife from yielding to undue influences in the voluntary alienation of her property."

We therefore hold that the provision of section six of the statute requiring the husband to sign the instrument in writing, by which the wife effects a sale or other alienation of her separate property is warranted by section fourteen of Article XI of the Constitution. The question actually involved in this case lies within narrower limits than the one proposed for discussion and now passed upon, and it is whether the wife has capacity under that section of the statute to execute in her name alone a power of attorney for the sale of her separate property. The reasons leading us to the conclusion already announced are applicable to this question, and are, in our opinion, decisive of the wife's incapacity to contract in that mode.

Were the latter question the only one touching the disability of the wife respecting her separate property created or declared by the sixth section of the statute, there would be great difficulty in avoiding the authority of *Mott* v. *Smith* and *Dentzell* v. *Waldie,* for the validity of that portion of the section involved in the case was necessarily assumed; but as there are many other questions arising under that clause of the section, it could not fairly be claimed that those cases have the full force of direct authorities upon the general

question of the constitutionality of that provision of the section.

We will now proceed to the consideration of the other questions presented in the case.

In 1860, James G. Dow, the husband of the plaintiff, conveyed certain · mining ground then owned by him to the defendant, in consideration of forty-eight shares of the capital stock of the company. The certificates of stock, instead of being issued to him, were issued to his wife, by his direction, and as a gift from him to her. On the 7th day of December, 1861, the husband, acting as the attorney in fact of his wife, sold and transferred the stock to E. H. Parker, and signed her name to the instrument of transfer and his own name also. The wife repudiates the sale, and brings this action to recover the dividends that have accrued since the attempted transfer of the stock. The Court below ordered a nonsuit.

The plaintiff presents the point that the answer is insufficient to raise an issue as to her ownership of the stock. The allegation of the complaint is: "That heretofore, to wit, on the 1st day of December, A. D. eighteen hundred and sixty-one, and from thence hitherto, the said plaintiff was, has been and still is the owner in her own right and as her separate property, of forty-eight shares of the capital stock of the said company." The defendant in his answer "denies that the said plaintiff, on the 1st day of December, eighteen hundred and sixty-one was, or from thence hitherto has been, or still is, the owner in her own right, and as her separate property, of any shares of the capital stock," etc. The dividends sought to be recovered, it is alleged, were earned and declared after the date mentioned, and as they would accrue to the person owning the stock when the dividends were declared, it was unnecessary to deny that the plaintiff was the owner previous to the 1st of December, 1861. The answer sufficiently denies the plaintiff's ownership from that date to the filing of the answer, unless the denial that she was the owner is qualified or restricted by the addition thereto of the words "in her own right, and as her separate property."

It is not alleged in the complaint that the plaintiff is a married woman, and the point is to be decided as if she were a *feme sole*. The owner (as defined by Bouvier) "is he who has dominion of a thing real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right." Giving the word that signification, the addition to it of the words "in her own right" neither enlarges, abridges nor qualifies its meaning. It is but a repetition of one of the necessary qualities of ownership. It is frequently annexed to the word owners, when speaking of the title of married women, but there is no greater necessity for its use than there is for the addition of the word "absolute" to the term "fee simple." And so also of the words "as her separate property;" for the idea conveyed by them is fully expressed and included in the comprehensive term "owner," unless it is alleged that the owner is married, when the term "separate property" is employed to distinguish the property owned or acquired in the manner specified in the Constitution and the statute by either spouse, from the common property.

The plaintiff, in order to recover the dividends, is bound to show that she was the owner of the stock at the time the dividends accrued. She cannot rely upon mere possession, as she might do in trespass or trover against any one except the true owner; nor can she rest upon proof of any special property in the stock that falls short of the legal title, for the defendant is not bound to account for the dividends to any one other than the holder of the legal title. It was admitted by the defendant on the trial, and the admission was accepted and acted on by the plaintiff, that the legal owner of the stock was entitled to receive the dividends specified in the complaint accruing after December 1st, 1861. It was unnecessary to deny that the plaintiff possessed any interest in the stock of a lower grade than would be designated by declaring her to be its owner.

82

In respect to the title of the stock the plaintiff's position is that the stock became her property by the gift of her husband. To this the defendant answers that the alleged gift did not change the title, because her husband resided in Nevada, and at common law, then and there in force, he could not make a gift directed to his wife. The plaintiff denies both the facts and the law of the defendant's position—that is, she denies that her husband resided in Nevada, and says that the presumption, in the absence of evidence on the point, is that the laws of Nevada were the same as those of California; and that admitting the common law to have been in force then, the gift was valid and passed the title to the wife. The next position of the plaintiff is that, holding the gift valid, the attempted transfer of the stock by the husband on behalf of his wife was void, because of the utter incapacity of the wife to execute a power of attorney; and the defendant answers this position with the proposition that if it was insufficient when executed, it was rendered valid by the fourth section of the Act of April 3d, 1863, to authorize married women to execute powers of attorney. (Stats. 1863, p. 165.)

In considering the correctness of the ruling of the Court on the motion for a nonsuit, we must accept as proven every fact which the evidence tended to prove, and which was essential to be proven, to entitle the plaintiff to a recovery upon the cause of action stated in the complaint. (*Cravens* v. *Dewey*, 13 Cal. 40.) The domicil of the husband of the plaintiff at the time of the alleged transfer of the stock is a material fact upon which some of the questions in the case depend. A domicil, as defined by Bouvier, is " the place where a person has fixed his ordinary dwelling, without a present intention of removal." The place where a person lives is held to be his domicil until the contrary appears, and this is made to appear when it is shown by positive or presumptive proof that at the time of the apparent change of domicil he had no intention of remaining for an unlimited time at the place to which he removed. In testifying in the case, the husband of the plaintiff stated that he resided in the Territory of Nevada from

1859 to 1862; that he did not go there to reside permanently, but only for a period of time; that from 1849 to 1859 he resided in California, and that on leaving Nevada he returned to California to reside, and has since resided therein. This testimony strongly tends to prove that his domicil was in this State at the time of the alleged transfer of the stock.

For the purposes of the motion for a nonsuit, the fact must be taken as proven, that the husband of the plaintiff had his domicil in this State, both at the time of the gift of the stock to his wife and of the alleged sale of it under the power of attorney from his wife. The domicil of the husband was also the domicil of his wife, and this results from the general rule that a married woman follows the domicil of her husband. The stock, the property out of which springs the matter in litigation, had its actual *situs* in this State. Two questions are here presented for consideration : First—By what law must it be ascertained whether the gift relied upon by the plaintiff, passed to her the legal title to the stock—the law of this State or the law of Nevada? And second—If the title did pass to her under the laws of either State, was the sale by the husband, by virtue of the power of attorney, valid and sufficient to pass the title to the purchaser?

The validity of the gift depends in a great measure upon the capacity of the plaintiff as a married woman. Jurists are not altogether agreed whether the law of the matrimonial domicil or that of the actual domicil governs in this respect. When marriage is declared by law to be a civil contract, there are very strong reasons for holding that the law of the matrimonial domicil should prevail as to the capacity of the parties, subsequent to the marriage, to contract, to acquire, hold and enjoy moveable property, and generally, as to the incidents to the marriage, on the ground that they, like parties to any other contract, by tacit agreement, adopt as a part of the contract the laws in force that are applicable to the subject matter of the contract. But the laws regulating the incidents to marriage operate upon and establish the states and conditions of persons, and as such they are usually held to affect

all persons having their domicils within the territory subject
to those laws, but have no extra-territorial force.   The doc-
trine generally adopted by the American Courts—and Mr.
Justice Story thinks it the better doctrine—is that the capa-
city of married women, and, generally, the incidents to the
marriage, are regulated by the law of the actual domicil.
(Sto. Con. of Laws, Secs. 63, 64, 65, 183, and following.)
This doctrine seems to have been affirmed by the statutes of
this State defining the rights of husband and wife.   The fif-
teenth section of the Act of 1850 provides that " The rights
of husband and wife, married in this State prior to the passage
of this Act, or married out of this State, but who shall reside
and acquire property herein, shall also be determined by the
provisions of this Act, with respect to such property as shall
be hereafter acquired, unless so far as such provision may be
in conflict with the stipulations of any marriage contract."
The residence contemplated by the Act, by those who are
married out of the State, is not a mere temporary or transient
residence, but such a residence as will fill the definition of the
term domicil, and when such a residence has been acquired,
the incidents to the marriage, so far as they relate to the
acquisition and enjoyment of property, and the capacity of
married women to acquire it, are regulated by the laws of
this State.

A gift is not perfect, nor does any interest pass to the pro-
posed donee, until there has been a delivery by the donor and
an acceptance by the donee.   Both of those acts were per-
formed in this State, and for that reason, if there could be any
doubt that the question was dependent upon the *lex domicilii*,
the validity of the gift is to be determined by the laws of this
State.   No authority is cited upon this precise point, but it
would appear that such must be the rule, both upon principle
and in analogy to contracts between persons residing or being
in different places.   As to contracts made by persons thus
situated, the rule is that they are to be interpreted by the law
of the place where they became complete contracts, unless

they are to be performed elsewhere.  (Sto. Con. of Laws, Sec. 283.)

There is no difficulty in holding that under the Constitution and laws of this State the wife has the capacity to take and hold in her own name and right, by gift from her husband, either real or personal property.  The Constitution (Article XI, Section 14) has declared the capacity of the wife to take without any limitation as to the donor; and in entire harmony with that constitutional provision, it was held by this Court in *Barker* v. *Koneman*, 13 Cal. 10, and *Kohner* v. *Ashenauer*, 17 Cal. 578, that the wife was capable of taking real estate conveyed to her directly by her husband as a gift.  There is no reason why she cannot take and hold in the same manner, personal property.  (See also *Peck* v. *Brummagim*, *ante*, 440.)

The legality and sufficiency of the sale and assignment of the stock to the purchaser must also be ascertained by the provisions of the laws of this State, for the sale was not complete as between the parties until the certificates were delivered to the purchaser, and that act was performed in this State.  There is a further reason for interpreting the contract by the *lex rei sitœ* already alluded to in discussing questions relating to the gift.  Contracts respecting public funds or stock, bank stock and other property of that incorporeal character which owes its existence to, or is regulated by peculiar local laws, must be made and carried into execution according to those laws.  They constitute exceptions to the rule requiring the validity of contracts respecting most other sorts of personal property to be determined by the *lex domicilii* or the *lex loci contractus*, as the case may require.  (Sto. Con. of Laws, Sec. 383.)  It is obvious that there may be peculiar reasons, and to which the law will give heed, why the stock of a mining corporation should be assigned in a certain mode, as by an instrument in writing, or by transfer upon the books of the corporation, or in any other mode prescribed by the local law.

The next question relates to the power of attorney from the plaintiff to her husband.  At the time of its execution a mar-

ried woman was incompetent to execute a power of attorney. To effect a valid sale at that time, it was essential that she should join with her husband in executing the instrument in writing by which the sale was evidenced, and this she must do in *propria persona*. (*Dentzell* v. *Waldie*, 30 Cal. 138; *Maclay* v. *Love*, 25 Cal. 367; *Mott* v. *Smith*, 16 Cal. 533; *Morrison* v. *Wilson*, 13 Cal. 494.) For this reason the power of attorney when executed and when the sale was made, as the Court held in *Dentzell* v. *Waldie*, was void. The defendant relies upon the fourth section of the Act of April 3d, 1863, (Stat. 1863, p. 165,) as remedying that defect and making the instrument valid; and the plaintiff insists that the Act cannot have such a retroactive effect as to validate a void power of attorney.

The plaintiff's point was fully considered in the last mentioned case, and it was held that the Legislature had power to accomplish that result, and that the operation of the Act was to make valid the powers of attorney theretofore executed, acknowledged and certified in the manner provided in section one of that Act. It was said by Mr. Justice SANDERSON, in delivering the opinion of the majority of the Court: " The Act in question does not divest the plaintiff of her title to the land in controversy. On the contrary, it gives effect to the contract made by her fairly and in good faith, by which she intended but failed to pass the title to another, merely because the proper legal forms were not observed. The same will that prescribes these forms has said that a non-compliance therewith shall be waived or excused, and the Act held valid notwithstanding, and we find no constitutional impediment in the way."

But the plaintiff contends that the power of attorney was not executed, acknowledged and certified in the manner prescribed in section one of the Act. The section reads as follows: "A married woman may make and execute powers of attorney for the sale, conveyance or incumbrance of her real or personal estate, provided her husband joins in the execution of the instrument and the same be acknowledged and certified

in the manner heretofore provided by law for the conveyance . of her real estate."

The instrument is not within the fourth section of the Act when read literally, because the plaintiff's husband did not join with her in the execution. But it is said that it is within the spirit of the Act; that the object of the statute requiring him to join in the execution of the instrument was to show his assent to her disposition of the property; and that this object is completely accomplished when he accepts the instrument and acts under it as her attorney in fact, in disposing of her property. It may be accepted as true that as the husband possesses no legal interest in his wife's separate property, the purpose of the statute in requiring him to join her in the execution of instruments in writing, by which she disposes of her property, was to compel her to procure his assent to the proposed disposition. But the statute goes further. The instrument must present on its face the evidence of such assent. He must not only assent in fact, but he must manifest his assent by his signature to the instrument in writing. The statute has in effect prescribed that the only evidence competent to prove his assent is his signature, which must appear on the face of the instrument. Evidence that would be sufficient to charge the husband in respect to his own property, as showing his assent to a transaction, would be wholly inadmissible when the transaction related to his wife's separate property. His receipt of the purchase money on the sale of his wife's land, would be as evincive of his assent to the sale as would his acts under the power of attorney; and clearly his assent to the conveyance of her land could not be shown by proving that he received the proceeds of the sale. There is precisely the same reason for insisting on the signature of the husband, that there is for requiring a strict compliance by the wife with the provisions of the law in respect to her acknowledgment, the reason being that such are the commands of the law. The authorities, both in this State and Texas, holding the wife to a strict compliance with the statute in

acknowledging the execution of her conveyances, are both numerous and uniform.

But admit that the assent of the husband, proved in the manner contended for by the defendant, to a power of attorney executed after the passage of the Act of 1863, or the Act of 1862, (Stats. 1862, p. 518,) which enables a married woman, by joining with her husband, to execute a power of attorney, would be sufficient to uphold such power of attorney and render it valid for any or all purposes; the difficulty that the defendant must surmount is, that the instrument at the time of its execution, and when it was acted on by the attorney in fact, was void, and no act or assent of the husband could give it vitality. It was held in *Dentzell* v. *Waldie* that the Legislature had power to render such an instrument valid and binding, but none other than the Legislature has competent authority to infuse life into an instrument that at its creation was null and void. The Legislature, in the exercise of its authority, could at its discretion impart vitality to and make valid all powers of attorney of married women, however executed or acknowledged, and whether assented to or not by their respective husbands in a designated manner, or could limit the operation of the Act to those of a specified character. And accordingly it was enacted that a particular class of powers of attorney—those that had been executed by married women jointly with their respective husbands, and acknowledged and certified in the manner provided by law for the conveyance of their real estate—should be valid and binding. All except those were left as the Legislature found them, simply void. The power of attorney in this case does not fall within the favored class, and is not entitled to the benefits of the curative legislation. We are not authorized to extend the Act to other cases than those mentioned in the statute, upon the idea that they are equally entitled to protection. Nor would we be justified in extending the Act by construction to any cases not clearly within it; but it being retrospective in terms, and being so questionable in its policy, as every statute must be that makes a document competent evidence in proof

of title, which at the time of its attempted execution was evidential of nothing except a mistake of law ; and it being in derogation of the general rules of law, as it effects a confirmation of that which was not susceptible of confirmation by the parties because it was void, it should be most strictly construed.

There is no ground for saying that the dividends were transferred, though the stock may not have been, for they are not alluded to in the transaction with the purchaser.

Judgment reversed, with directions to the Court below to set aside the order of nonsuit.

Mr. Justice SHAFTER did not participate in the decision.