## MARY J. DENTZEL *v.* JOHN WALDIE, AND FRANK POWELL.

SALE OF MARRIED WOMAN'S SEPARATE ESTATE. — The cases affirmed in which it was held that prior to the Act of April 3d, 1863, a married woman could not sell and convey her separate estate by an attorney in fact, but must do it in *propria personæ*.

RETROSPECTIVE LAWS. — Remedial statutes which are retrospective, but do not impair contracts, or disturb absolute vested rights, and only go to confirm rights already existing, are not unconstitutional.

STATUTE CONFIRMING CONTRACTS ALREADY MADE. — A statute designed to validate and confirm contracts made in good faith, but not made in the precise mode prescribed by the existing law, does not operate to divest vested rights, and is not therefore unconstitutional.

ACT VALIDATING POWERS OF ATTORNEY BY MARRIED WOMEN.—The Act of April 3d, 1863, validating powers of attorney theretofore made by married women for the sale of their separate estate, and conveyances made by attorneys in fact thereunder, is constitutional.

POWER OF ATTORNEY FOR SALE OF WIFE'S SEPARATE ESTATE. — In a power of attorney made by the wife for the sale of her separate estate, it is not necessary that the husband's name be mentioned in the body of the instrument as a constituent, but it is sufficient if he sign, seal, and acknowledge it.   It is not necessary that such power should in terms authorize the attorney to sign the husband's name to the deed.

DEED CONVEYING WIFE'S SEPARATE ESTATE.—It is not necessary that the husband's name, as a grantor, should be inserted in the body of a deed given by a married woman conveying her separate estate, but it is sufficient if he sign, seal, and acknowledge it.

SAME.—*Query?* Is it necessary for the attorney in fact of a married woman, for the conveyance of her separate estate, to sign the husband's name to the deed executed under the power?

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The plaintiff, who was a *feme sole*, in 1854 acquired the fee to Lot Number Five in the square between I and J and Eleventh and Twelfth streets, in the City of Sacramento. In 1855 she married F. A. Dentzel, and in 1857 she executed to John H. Gass a power of attorney authorizing him to sell the same. The following is the first part of the power:

"*Know all men by these presents*, That I, Mary Jane Foster, widow of Samuel Foster, deceased, and now the wife of Frederick A. Dentzel, of the City of New Orleans, and State of Louisiana, and authorized and assisted by my husband, and consenting to these presents, have made and constituted and appointed, and by these presents do make, constitute and appoint John H. Gass, of the State of California, my true and lawful attorney, for me and in my name, place and stead," etc.

The name of the husband did not appear in the body of the power, except as above shown, but he signed, sealed, and acknowledged it with his wife. On the 18th day of July, 1857, Gass, the attorney in fact, by virtue of the power, executed a deed of the property to R. H. N. Sanders. The following is the beginning of the deed to Sanders:

"This indenture, made the eighteenth day of July, in the year of our Lord, one thousand eight hundred and fifty-seven, between Frederick A. Dentzel and Mary J. Dentzel, by their attorney in fact, John H. Gass, party of the first part, and R. H. N. Sanders, party of the second part, witnesseth."

This deed was signed "Frederick A. Dentzel and Mary J. Dentzel, by their attorney in fact, John H. Gass."

On the 16th day of July, 1857, Sanders gave Gass a power of attorney authorizing him to sell the same lot, and Gass,

under this power from Sanders, afterwards sold it to Waldie, and received three thousand one hundred dollars as the price. Gass did not pay the money, or any portion of it, to the plaintiff. Powell, the other defendant, claimed under the deed to Waldie. On the 6th day of July, 1863, the plaintiff commenced this action to recover possession of the lot. The defendants recovered judgment, and the plaintiff appealed.

*Henry H. Hartley*, for Appellant.

By an examination of the power in question, it will be seen that it is a power from the wife alone; that she makes the appointment by the consent and assistance of her husband, and the authority given is to act for her, and her alone. The husband authorizes no act to be done for him or in his name.

To give a deed of conveyance of the wife's real estate any validity, it must be executed by both husband and wife, (Wood's Digest, p. 102, Sec. 19,) and the power of attorney must so authorize the agent to execute the deed. (Statutes of 1863, p. 165, Sec. 1; *Morris* v. *Wilson*, 13 Cal. 497; *Ingoldsby* v. *Juan*, 12 Cal. 564.)

Prior to the Act of 1863, authorizing married women to make powers of attorney, all such powers were null and void. The law presumed that all persons purchasing in pursuance of said power knew that the same was void, and that all deeds executed by virtue and in pursuance of the same, were also mere nullities and void, and it was their folly to have paid their money to Gass, the attorney. (Story on Agency, Sec. 72.)

If, then, the power of attorney and the deeds read in evidence in this case were without effect, mere nullities and void, until the passage of the Act of 1863, the inquiry then arises, what effect has that Act had upon them? Does it operate as a confirmation of title, or does it operate as a means by which the title was transferred? Lord Coke defines a confirmation to be " *a conveyance of an estate or right* in esse, *whereby a voidable estate is made sure and unavoidable, or where a partic-*

*ular estate is increased.*" (Greenleaf's Cruise, Vol. II, pp. 409, 410, Sec. 40.)

By the above definition it will be seen that a confirmation cannot infuse life and validity into that which is inoperative and void; it cannot create title; it can only correct infirmities. (*Branham & White* v. *Mayor and Common Council of San José*, 24 Cal. 605; *Taylor* v. *Porter*, 4 Hill, 140; *Bickman* v. *S. & S. R. R. Co.*, 3 Paige, 73; *Varick* v. *Smith*, 5 Paige, 159.)

The Legislature cannot confirm a claim of title that is void.

*R. C. Clark*, and *Moore & Alexander*, for Respondent.

Appellant's counsel urge that the Legislature had no power to pass the Act of 1863; but such authority in the Legislature has been so often recognized by this and other Courts, and the doctrine has been so firmly established, that we deem it unnecessary to discuss the question at any considerable length. Counsel cites the case of *Branham et al* v. *Mayor, etc. San José*, 24 Cal. 605, in support of his view. In that case, this Court said, after announcing the general doctrine, that " The only exception to the general rule is when the confirmation is the act of sovereign will. (Comyn's Digest, Vol. III, p. 139; D. I. 140; *Blessing* v. *House*, 3 Gill. and John. 290.) It was upon this view that the Act of 1858, confirming the so-called 'Van Ness Ordinance,' was passed, and the validity of that ordinance upheld in *Hart* v. *Burnett*."

The case just cited, and the case of *Hart* v. *Burnett*, as well as several other decisions of this Court, and the numerous cases therein referred to, are direct and conclusive authorities in our favor upon this point. The power of attorney from the plaintiff and her husband to Gass was executed in good faith, for the purpose of conveying this land. Under this authority, the property was sold to defendant, and he paid to the agent of plaintiff therefor more than three thousand dollars.

If the plaintiff failed to receive the money from the person she had trusted and empowered to act for her, it is certainly no fault of the defendants. The plaintiff and her husband

had done all in their power to make the sale a good and valid one, and as some doubt existed under our statute as to the validity of this and other like transactions, the Legislature, in 1863, passed a law confirming and validating such acts. By this act the honest wishes and intentions of the parties are carried out, and where third parties are not interfered with, no one has a right to complain.

By the Court, SANDERSON, J.:

Three points are made by counsel for appellant:

1. The power of attorney from plaintiff to Gass was null and void at the time it was made, because at that time married women had no legal capacity to make instruments of that character.

2. Being invalid it was not subsequently made valid by the Act of 1863, authorizing married women to execute powers of attorney, because that Act is unconstitutional so far as it acts, or was designed to act upon past transactions.

3. The power, if not wholly void for the foregoing reasons, is nevertheless fatally defective, because it is not a joint power of the husband and wife and does not therefore authorize the attorney therein named to sign the name of the husband as well as the wife to the deed which he subsequently executed, or in other words does not authorize him to make a joint deed in the name of both husband and wife.

1. That the first point is well taken is demonstrated by a series of cases where it has been held, either expressly or by necessary implication, that a married woman could not, prior to the Act of the 3d of April, 1863, sell and convey her separate estate by an attorney in fact, but must do it in *propria persona.* (*Selover* v. *The American Russian Commercial Company,* 7 Cal. 266; *Barrett* v. *Tewksbury,* 9 Cal. 13; *Morrison* v. *Wilson,* 13 Cal. 494; *Mott* v. *Smith,* 16 Cal. 533; *Maclay* v. *Love,* 25 Cal. 367.) In view of the foregoing cases any discussion of the question in this place is deemed unnecessary. It was because such was understood to be the law that the

Act of the 3d of April, 1863, was passed.   But be that as it may, the question becomes unimportant under the view which we take of the second point made by counsel for the appellant.

*Constitutionality of retrospective remedial laws.*

2. The fourth section of the Act of the 3d of April, 1863, (Statutes of 1863, p. 165) reads as follows:

"SEC. 4.   All powers of attorney heretofore made and executed by any married woman, with her husband, and acknowledged and certified in the manner provided in section one of this Act, and all conveyances heretofore and hereafter executed under and by virtue of such powers of attorney, and acknowledged and certified in the manner provided for in section two of this Act, shall be valid and binding; *provided,* that no right already vested in third persons shall be affected by anything in this section contained."

Chancellor Kent, in speaking of retrospective statutes, says: "A retrospective statute affecting and changing vested rights, is very generally conceded, in this country, as founded on unconstitutional principles, and consequently inoperative and void.   But this doctrine is not understood to apply to remedial statutes, which may be of a restrospective nature, provided they do not impair contracts, or disturb absolute vested rights and only go to confirm rights already existing, and in furtherance of the remedy by curing defects, and adding to the means for enforcing existing obligations.   Such statutes have been held valid, when clearly just and reasonable, and conducive to the general welfare, even though they might operate in a degree upon existing rights, as a statute to confirm former marriages defectively celebrated, or a sale of lands defectively made or acknowledged.   The legal rights affected in those cases by the statute were deemed to have been vested subject to the equity existing against them, and which the statute recognized and enforced.   But the cases cannot be extended beyond the circumstances on which they repose, without put-

ting in jeopardy the energy and safety of the general principle."
(1 Kent's Com. 455.)

In 1835, the Legislature of Ohio passed an Act to cure
defective conveyances previously made by married women.
In 1843, in the case of the *Lessee of Christian Good* v. *Eliza-
beth Zercher*, 12 Ohio, 364, the Supreme Court of that State
held the Act to be unconstitutional upon the grounds urged in
the brief of counsel for the appellant in this case; but in
1847, in the case of *Chestnut* v. *Shane's Lessees*, 16 Ohio, 599,
the same Court, composed in part of different Judges, over-
ruled *Good* v. *Zercher* and held that the Act in question did
not divest vested rights nor impair the obligation of contracts
and was therefore free from all constitutional objection.

A similar statute was passed by the Legislature of Pennsyl-
vania in 1826, and was held to be constitutional by the
Supreme Court of that State in several cases. (*Barnet* v.
*Barnet*, 15 Serg. and Rawle, 72 ; *Tate* v. *Stooltzfoos*, 16 Serg.
and Rawle, 35 ; *Mercer* v. *Watson*, 1 Watts, 355.) The case
last cited was taken by writ of error to the Supreme Court of
the United States, where it was held that the Act did not
impair the obligation of contracts within the meaning of the
Federal Constitution. (8 Peters, 110.)

Statutes which operate to divest vested rights, or in other
words, which take the property of one citizen and, without
compensation or his consent, bestow it upon another, are
opposed to natural right and subversive of any government
founded upon fixed laws. But it is a misapplication of terms
to say that statutes designed to validate and confirm contracts
made in good faith, but not made in the precise mode prescribed
by the existing law, operate to divest vested rights; for, as
was said by Mr. Justice Duncan in *Tate* v. *Stooltzfoos, supra,*
" It is not intended by a vested right that it shall be a right
to do wrong ; to take advantage of a mere slip in form where
the transaction is a *bona fide* one."

Smith, in his Commentaries on Statutory and Constitutional
Law, at section two hundred and sixty-seven, says : " The
Legislature may constitutionally enact laws to render valid

and legal the doings of public officers who have exceeded their authority, although by such laws individuals may be deprived of rights previously vested; and the objection that they impair the obligation of contracts does not apply to them. The Legislature may also make provision by statute curing or obviating defective forms of acknowledgments of deeds to pass real estate, and give to such acknowledgments the same efficiency as if they had originally been taken in the proper form; and such Acts, although they extend retrospectively to deeds acknowledged previous to their passage, do not impair the obligation of a contract, and that for the reason that they do not touch any title acquired under the deed. They assume the title to be good, and prevent the contract from being impaired by reason of a defective acknowledgment; or, in other words, their legal operation goes to confirm and not to impair the contract."

The Act in question does not divest the plaintiff of her title to the land in controversy. On the contrary it gives effect to the contract made by her fairly and in good faith by which she intended but failed to pass the title to another merely because the proper legal forms were not observed. The same will which prescribed those forms has said that a non-compliance therewith shall be waived or excused, and the Act held valid notwithstanding, and we find no constitutional impediment in the way.

3. The power of attorney to Gass and the deed executed by him in the name of the plaintiff and her husband would be but waste paper, as we have seen, but for the Act of 1863. If, through them, the title to the land has passed from the plaintiff to the defendants, such has not been the case by force and effect of any virtue which those instruments originally possessed, but by reason of such virtue as was imparted to them by the Act of 1863. The question, therefore, remaining to be considered under the third point made by counsel is not as to how a married woman may convey her separate estate

when she acts in person, but how she is to authorize another to convey it.

## Married woman's power of attorney.

It is claimed on the part of counsel that the power must be a joint power of the husband and wife, meaning thereby that the husband must appear in the body of the instrument as a joint constituent with his wife, and that it is not sufficient if he merely sign, seal and acknowledge the instrument in proper form. Counsel undertakes to sustain his position by a reference to the second section of the Act concerning conveyances, which provides that the separate property of the wife may be conveyed by the joint deed of the husband and wife, and by a construction of the Act of 1863, to the effect that the power of attorney therein provided for is thereby required to be made and executed in the same manner. But is such the case? The language of the Act of 1863 is not that "the husband and wife may make and execute a power of attorney for the conveyance of her separate estate;" nor that "the husband must join in the execution of the instrument in the manner heretofore provided by law for the conveyance of her real estate." On the contrary, the language is that "the wife may make and execute powers of attorney, * * * * provided her husband joins in the execution of the instrument, and the same be acknowledged in the manner heretofore provided," etc. The qualifying phrase, "in the manner heretofore provided," etc., spends itself on the mode and form of the acknowledgment, and does not attempt to prescribe a rule for the execution of the instrument. Hence, so far as the execution of the instrument, as contradistinguished from its acknowledgment, is concerned, no previous mode is referred to and adopted. The mode of execution, therefore, is to be ascertained by a construction of the language employed in the Act itself, and not by a reference to the law as it previously existed, whatever that law may be. The language of the Act is as follows:

" SECTION, 1.  A married woman may make and execute powers of attorney for the sale, conveyance, or encumbrance of her real or personal estate; provided her husband joins in the execution of the instrument," etc.

In construing this language it must be borne in mind that the husband has no legal interest whatever in the separate real estate of his wife; and that it is her act and not his which passes the title.  His power in the premises is that of a veto merely.  Whatever part, therefore, the husband takes, is but of the mode and manner in which her act is to be performed. For the purpose of guarding the wife against imposition and the consequences of bad bargains, it was thought best not to allow her to dispose of her separate property, except by and with the advice and consent of her husband.  To guard her against the importunities of her husband, and to secure to her entire freedom of action, it was thought best not to allow her to dispose of her separate estate, except upon private examination, without the presence of her husband, by a competent officer of the law, touching the reasons by which she may have been influenced to make the conveyance.  Thus to protect her as against strangers, the consent of the husband is interposed and made an indispensable condition; and to protect her as against her husband a private examination as to the reason for her action by a competent officer is interposed, and also made an indispensable condition.  Both conditions are dictated by the same policy and stand upon a common level.  A mistake as to one is no more fatal than a mistake as to the other.  If the act is done freely and voluntarily, without fear or compulsion or undue influence of the husband and with his knowledge and consent, every reason, upon which every law yet passed upon the subject is grounded, is fully satisfied. The performance of these two indispensable conditions is to be strictly proved, however, in the manner prescribed by the law, and to that extent it may be conceded that the mode and manner is of the substance of the act.

Under the light of the foregoing paragraph how does the

first section of the Act of 1863 require the consent of the husband to the appointment by the wife of an attorney in fact for the sale and conveyance of her separate estate to be proved? In our judgment the wife is intended to be the sole constituent and the husband is only required to signify his consent to her appointment by "joining in the execution," or in other words, by signing, sealing and acknowledging the instrument. The wife alone, by the express terms of the Act, is authorized to select and appoint the attorney, but she is required to do it with the advice and consent of her husband, which is to be attested by his signature and seal.

In the power before us the plaintiff is the sole constituent, but she describes herself as the wife of Frederick A. Dentzel and states in substance that she appoints Gass as her attorney for the purposes therein mentioned, by and with the advice and consent of her husband. That she did so is attested by the signature and seal of the husband and his acknowledgment of the same before a proper officer in due form of law, which in our judgment is not only a sufficient but a strict compliance with the terms of the statute.

But assuming, for the sake of the argument, that the statute of 1863 requires that the power of attorney should be made and executed in the manner in which deeds of the separate property of the wife had to be made under the law as it stood prior to the passage of that Act, the result, in our judgment, is the same. Had this instrument been a deed instead of a power of attorney we think it would have been good under the law as it existed prior to the passage of that Act.

*Deed of married woman's separate property.*

Whatever difficulty attends the question, under the aspect in which we are now considering it, arises from the fact that the Legislature in establishing a rule upon this subject has carelessly adopted different modes of expressing, in our judgment, the same idea. Thus the second section of the Act concerning conveyances provides that a "husband and wife may by their joint deed convey the real estate of the wife in

like manner as she might do by her separate deed if she were unmarried." What is here meant by the words "joint deed?" Is it necessary that the husband should appear as a grantor in the body of the deed, or is it sufficient if he join in signing, sealing and acknowledging? Why make him play the part of grantor when he has nothing to grant? His assent to the act of his wife is all that the policy of the law could require. That is as well signified by a joint signing and sealing only as by making him assume in addition a false character. We think the true intent of the Legislature is more aptly expressed in the nineteenth section of the same Act, which provides that "a married woman" (not "husband and wife," as stated in the second section of the Act) "may convey any of her real estate by any conveyance thereof executed and acknowledged by herself and her husband in the manner hereinafter provided." Nothing is here said of a "joint deed;" only a joint execution, or a joint signing, sealing and acknowledging is required. If by a "joint deed" we are to understand a deed in which both husband and wife appear as grantors, we recognize a direct conflict between different provisions of the same Act. If we adhere to the strict letter, there is no such thing as harmonizing the two provisions, for one is that the husband and wife may jointly do the act, and the other is that the wife alone may do it, provided her husband executes the instrument by which she does it. In such cases, in order to ascertain the true intent, we may look at other Acts passed by the same Legislature upon the same subject. The Act concerning the rights of husband and wife was before the Legislature at the same time and passed through the successive stages of legislation, *pari passu* with it. The sixth section of that Act provides that no sale or other alienation of the wife's separate estate shall be made, "unless by an instrument in writing, signed by the husband and wife, and acknowledged," etc. In view of these various provisions we are of the opinion that the true intent of the Legislature is correctly expressed in the language last quoted, which was also the last employed upon the subject. Whether, therefore, the sufficiency of the power

be determined by the Act of 1863 alone, or by the previous legislation to which it refers, the result is, in our judgment, the same. Neither in a deed or a power of attorney is it necessary that the husband should appear in the one as a grantor or in the other as a constituent. If they are signed, sealed and acknowledged by the husband, they are, in the respect under consideration, valid instruments.

### *Power of attorney to convey wife's separate property.*

Having determined that the power was properly made, executed and acknowledged, it only remains to determine the same question with relation to the deed.

The power, as already stated, does not in terms authorize the attorney to sign the name of the husband to the deed. It was not necessary that it should, for the second section of the Act provides and dictates what shall be the form of the deed. That section, in connection with the letter of attorney, covers the whole question of power. Under and by that section the attorney is directed and required to execute the deed in the same manner as if the parties making the power were unmarried, and it is in that section, the power of attorney being in conformity with the provisions of the first section, that the attorney finds the only rule which is to govern his action. Whether by the terms of that section the attorney is required to execute the deed in the name of the husband is, to say the least, doubtful. There is certainly no reason in requiring him to do so, for the husband has already in person signified his assent to the deed in a mode equally authentic and convenient on the score of proof, and the execution of the deed in the name of the wife only fully subserves the policy of the law. But it is unnecessary, for the purposes of this case, to decide that question, for the deed in question is executed in the name of the husband.

Judgment affirmed.

Neither Mr. Justice RHODES nor Mr. Justice SAWYER expressed any opinion.