. [L. A. No. 507.   Department Two.—October 27, 1899.]

ELEANOR   HART,   Respondent,   v.   KATHARINE   A.
CHURCH and ELTON CHURCH, Appellants.

MORTGAGE UPON HOMESTEAD—JOINT EXECUTION BY HUSBAND AND WIFE.
In order to constitute a valid mortgage upon homestead prem-
ises, it must be jointly and concurrently executed by both the
husband and the wife.

ID.—EXECUTION AND DELIVERY BY WIFE—SUBSEQUENT CONCURRENCE OF
HUSBAND—RE-RECORD.—A mortgage upon the homestead executed
and delivered by the wife alone, and recorded as her mortgage,
is invalid and void, and acquires no validity by the subsequent
execution and acknowledgment by the husband of a written con-
currence therein transcribed upon the mortgage after the deliv-
ery and record thereof, and the subsequent re-recordation of
the mortgage.

ID.—BONA FIDE PURCHASE OF NOTE BEFORE MATURITY, FOR VALUE—EX-
TINGUISHMENT OF PRE-EXISTING DEBT—BURDEN OF PROOF AS TO
KNOWLEDGE OF FRAUD.—After proof of the fraudulent intent of the
vendor of a note and mortgage, the burden resting upon the
purchaser thereof before maturity to prove the payment of
value is sustained by proof that the transfer was in considera-
tion of the extinguishment of a pre-existing debt owed by the
vendor to the purchaser; and the burden of proof is then upon
the party assailing the transfer for fraud to show that the pur-
chaser had knowledge of the fraud and of the fraudulent intent
of the vendor in making the sale to him.

ID.—ACTION TO CANCEL MORTGAGE UPON HOMESTEAD—FRAUD—SUFFI-
CIENCY OF COMPLAINT.—The complaint in an action by the wife to
cancel a mortgage executed by her upon the homestead, without
the concurrent action of the husband, alleging fraud in its pro-
curement, states a cause of action for cancellation of the mort-
gage as a void instrument, regardless of the alleged fraud.

ID.—ACTION BY WIFE—HUSBAND NOT A NECESSARY PARTY.—The action
by the wife being in protection of her homestead right, her hus-
band is not a necessary party.

ID.—SEPARATE ESTOPPEL OR RATIFICATION—DIFFERING RULES AS TO MORT-
GAGE AND NOTE.—Neither the husband nor the wife can be sepa-
rately estopped by conduct from asserting the invalidity of a void
mortgage upon the homestead; nor can either of them sepa-
rately ratify such mortgage so as to give it validity. But the
rule is otherwise as to the note secured by the mortgage, in
reference to which there may be a separate estoppel by conduct
from disputing its validity, or a separate ratification thereof.

ID.—DILIGENCE OF PLAINTIFF—CROSS-COMPLAINT OF PURCHASER OF NOTE
AND MORTGAGE—DEFENSE OF FRAUD—LACHES—STATUTE OF LIMITA-
TIONS.—Although a plaintiff who seeks the rescission of a contract
for fraud must act with reasonable diligence in view of the

peculiar facts of the case, and must commence his action within three years after the discovery of the fraud, yet, where a defendant seeks affirmative relief against the plaintiff, by cross-complaint, as a purchaser of the note and mortgage. to have their validity adjudged, the defense of fraud against such cross-complaint cannot be barred by laches or by the statute of limitations; and the only question is whether the cross-complainant is an innocent purchaser of the note before maturity, or had knowledge of the fraud averred by way of defense.

APPEAL from a judgment of the Superior Court of Riverside County. J. W. Hughes, Judge, presiding.

The facts are stated in the opinion of the court.

John G. North, for Appellants.

Wilfred M. Peck, and William J. Hunsaker, for Respondent.

HENSHAW, J.—Plaintiff brought her action to procure the surrender and cancellation of a mortgage in the sum of five thousand dollars upon the homestead. She pleaded that in January, 1894, when she was the wife of Hart, the latter executed and acknowledged the declaration of homestead upon the premises in question. Thereafter, in January, 1895, her husband, for a valuable consideration, conveyed to her all his interest in the land, and ever since that day she has been the owner in fee thereof. She was induced by her husband to admit to her household the defendant Katharine A. Church. Katharine A. Church and her husband became and continued to be unduly intimate with each other. In the month of December, 1894, they entered into a conspiracy and agreement, "whereby they confederated and agreed together that they would, for their joint and mutual use and benefit, by threats, intimidation, and undue influence, compel plaintiff to execute and deliver to said defendant Katharine A. Church a mortgage upon said real estate to secure the payment to her of the sum of five thousand dollars, notwithstanding the fact that said plaintiff was not indebted to said defendant in any sum whatever." While plaintiff was in a distracted mental and feeble bodily condition, in pursuance of the conspiracy, Katharine A. Church threatened and told plaintiff that if plaintiff

did not at once execute the mortgage "she, said defendant, would procure the husband of plaintiff to obtain a divorce from plaintiff," and Katharine A. Church induced the husband to write plaintiff a letter, and he did write her a letter, threatening that he would procure a divorce from her if she did not immediately execute the mortgage demanded by the defendant. "By reason of the representations and threats of the defendant and the commands of her husband she was put in fear and greatly distressed, and believed, in her enfeebled mental and physical condition, that her husband would sue for a divorce and attempt to ruin her in character if she refused to execute the mortgage," and under such fears she executed it upon the seventh day of March, 1895. Upon the first day of August following, Roswell Hart, her husband, executed the following written instrument upon the same paper which contained the mortgage: "I, Roswell Hart, husband of Eleanor Hart, for a valuable consideration, hereby join and concur in the foregoing mortgage as of the sixth day of March, 1895." This was signed and acknowledged by Hart, and the mortgage, together with Hart's declaration as above given, was recorded on the second day of August, 1895. This action was commenced by plaintiff upon March 20, 1896. In excuse for her delay in seeking to enforce a cancellation, she pleaded that from the seventh day of March, 1895, the time of the execution of the mortgage, to the twenty-eighth day of April, 1895, she was ill and unable to attend to business; that on May 1, 1895, she commenced a suit for divorce against her husband, charging him with adultery with the defendant Katharine Church; "that her said husband, acting for himself and said Katharine A. Church, and for the purpose of inducing the said plaintiff to dismiss her suit for divorce against him, and to refrain from bringing an action against said defendant to procure the cancellation of said mortgage, promised plaintiff to procure from said defendant a satisfaction of said mortgage, and said Roswell Hart, from time to time thereafter until about March 1, 1896, renewed said promise to procure such satisfaction, and plaintiff, relying upon the aforesaid promises of her husband to procure such satisfaction, did refrain from taking any measures to rescind the mortgage or bring an action to procure a rescission and cancellation thereof;

that plaintiff was not informed that said Roswell Hart could not and would not procure such satisfaction of said mortgage until about the first day of March, 1896, whereupon she employed counsel to commence this action and did commence this action on the twentieth day of March, 1896." Her prayer was that she be adjudged the owner in fee of the property; that the mortgage be declared void and canceled, and for general relief.

To this complaint defendants interposed demurrers both general and special. These being overruled, the defendant Katharine Church answered, denying the averments of the complaint, and pleading that the mortgage was freely and voluntarily given as security for a debt due her from Roswell Hart, pleading further that Roswell Hart never conveyed the mortgaged land to his wife, but that she had surreptitiously and fraudulently secured possession of a deed to this land which had never been delivered to her, and caused it to be placed upon record; that Roswell Hart thereafter began a suit against her to set aside the deed, when, on the thirteenth day of May, 1895, plaintiff executed to him her deed to an undivided one-half of the land, subject to the mortgage made to this defendant. The defendant Elton Church, who is the son of the defendant Katharine Church, answered denying the allegations of the complaint, and filed a cross-complaint, alleging that he was the owner by purchase for a valuable consideration and without notice of the note and mortgage in question; pleaded certain acts and declarations of the plaintiff by way of ratification of her contract of mortgage; and asked that she be estopped from contesting the validity of the same, and that he be decreed the *bona fide* owner and holder of them. In this condition of the pleadings the cause went to trial before a jury.

It is contended by appellant that this is not an action to determine the validity of an adverse claim under section 738 of the Code of Civil Procedure, but is an action under section 3412 of the Civil Code, which declares that a written instrument, in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged and ordered to be delivered up or canceled; and in this connection reference is had to the case of *Castro v. Barry,* 79 Cal. 445.

It is further argued that the sole ground presented for the rescission and cancellation of this contract is, that it was procured from the plaintiff by menace and fraud, and, if the complaint does not show equity, the relief prayed for will be withheld. If we could adopt appellant's view that the complaint seeks relief solely upon the ground of fraud, and that the contract of mortgage was therefore not absolutely void, but voidable merely, appellant's conclusion would be impregnable, and it would become necessary in the first instance to consider the sufficiency of the complaint as a pleading seeking such relief.

But, if all the allegations respecting the fraud were eliminated from the complaint, there would still be left averments sufficient to constitute a cause of action. It would be a cause of action directed against this particular written instrument, and under it the court would be asked to decree, not that the instrument was voidable, but that because of the manner of its attempted execution it was void absolutely. These particular averments of the complaint—and as to them it may be said that they are sustained by the evidence and findings—are substantially the following: The plaintiff, the wife of Roswell Hart, executed a mortgage upon the homestead to the defendant Katharine Church for the sum of five thousand dollars. The mortgage was simply a mortgage from Eleanor Hart, mortgagor, to Katharine A. Church, mortgagee, and did not contemplate nor provide for the joining therein of plaintiff's husband. The mortgagor, at the time of the execution of the mortgage, was not indebted to the mortgagee in any sum whatever. This mortgage, dated the sixth day of March, 1895, was acknowledged by the mortgagor upon the seventh day of March following, and was filed for record upon the last-named day. Nearly five months thereafter—that is to say, upon the first day of August, 1895—Roswell Hart, husband of plaintiff, signed and acknowledged the following writing which had been transcribed upon the mortgage theretofore given by his wife: "I, Roswell Hart, husband of Eleanor Hart, for a valuable consideration, hereby join and concur in the foregoing mortgage as of the sixth day of March, 1895," and upon August 2, 1895, the mortgage was again filed for record in the recorder's office.

Under these allegations, the question arises whether or not a

mortgage so executed upon the homestead property creates any lien thereon, and, if not, the judgment annulling it must be upheld regardless of any consideration of the alleged fraud.

"The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both the husband and wife." (Civ. Code, sec. 1242.) The provisions of the earlier homestead act of 1860, as amended in 1862, were somewhat different in their phraseology, but in effect they were the same as those now set forth in the code. (*Gleason v. Spray,* 81 Cal. 217; 15 Am. St. Rep. 47.) As early as *Poole v. Gerard,* 6 Cal. 71, 65 Am. Dec. 481, it was said by this court: "To make a valid sale of the homestead requires the joint deed of husband and wife." In *Barber v. Babel,* 36 Cal. 11, the homestead act received elaborate consideration from this court, and Chief Justice Sawyer in delivering its opinion, not once, but repeatedly, enunciated an interpretation of the statute to the effect that the interest in the land to the extent of the homestead value cannot, after the declaration and while both spouses are alive, "be severed, alienated, encumbered, devested, destroyed, or impaired without the concurrent act of both parties in the mode prescribed by the act." In *Gagliardo v. Dumont,* 54 Cal. 496, still considering the statute of 1860, it is said: "Under the restraints imposed by the homestead law, neither the husband nor the wife had power to transfer the homestead by a separate conveyance, nor could either encumber it to the prejudice of the other, or of both, or to the destruction of the homestead itself. . . . . Neither could, without the consent and concurrence of the other, alienate or transfer it. It was created as a place of residence for the family, and it is the policy of the law to preserve it intact for that purpose until both the husband and wife shall mutually resolve to destroy it by alienation or abandonment. In pursuance of that policy, its destruction is prohibited except by the joint act of both in the mode provided by the homestead law." The case of *Burkett v. Burkett,* 78 Cal. 310, 12 Am. St. Rep. 58, arose when the homestead statute had been superseded by the code provision, and in discussing the code provision it is said: "The object of the statute, as construed by this court, is to prevent the de-

struction of the homestead, except by the consent of the parties expressed by a joint conveyance."

We have been at pains thus to quote from the decisions of this court to show that uniformly and without any conflict the statute and the code, though not using the term "jointly" or "concurrently," have been construed to mean that the homestead cannot be alienated or encumbered by separate instruments separately executed by the husband and wife, and that it can only be so alienated or encumbered by the joint and concurrent execution of the instrument by the two. Neither *Ingoldsby v. Juan*, 12 Cal. 564, nor *Dentzel v. Waldie*, 30 Cal. 138, at all militate against this declaration. In both of these cases the attempt was made to convey the wife's separate property. In both cases it was found that the assent of the husband to the execution of the deed was contemporaneous with and part of the execution of the deed of the wife.

Such being our law relative to the alienation or encumbrance of homesteads, it is apparent at once that this attempted mortgage is absolutely void. Clearly, the execution and acknowledgment by the wife alone of a mortgage upon the homestead was the merest nullity. Nor did the fact that the husband, five months thereafter, wrote upon the mortgage paper a statement that he joined and concurred therein, and signed and acknowledged this declaration, add any validity to an instrument which at the time when it was drawn, signed, acknowledged, and delivered by the wife was nothing more than her own futile and abortive attempt to encumber the homestead. The husband's declaration, five months after, that he joined in this separate mortgage of his wife as of the date when it was executed, did not make the mortgage an instrument jointly and concurrently executed by the parties in the following essential respect, if in no other: The law declares that the mortgage shall be executed by both parties, and, as this law has been construed, it is to be jointly and concurrently executed by both parties in one instrument. An essential part of execution is delivery. It must be concurrently delivered by both parties. It was delivered by the wife upon March 7th, and, the husband not joining therein, such a delivery was a nullity. Five months thereafter, when the husband took into his hands the mortgage

and indorsed upon it the words above quoted, and in turn handed it back to the mortgagee, it was in no sense a joint delivery or a delivery of the wife at all.

The conclusion thus reached, that the mortgage was absolutely void for a failure to execute it in compliance with the terms of the code, justifies the judgment of the trial court, without regard to the question of its fraudulent procurement.

The complaint asked merely for the rescission and cancellation of the mortgage, and did not ask for the surrender and cancellation of the note for five thousand dollars executed by plaintiff to the defendant Katharine Church, which note was secured by the mortgage. The mortgage being but an incident to the debt, it could well be that one might procure through fraud security for a valid obligation. The result, therefore, of a decision upon the issues tendered by plaintiff would be to leave the note outstanding, while canceling the mortgage which secured it.

But the defendant Elton Church, in addition to answering, filed a cross-complaint in which he alleged the execution by plaintiff to defendant Katharine Church of her promissory note for five thousand dollars secured by the mortgage in question; that the note was indorsed and the mortgage assigned to him before maturity; that he became the owner and holder of the note and mortgage without knowledge or notice of any of the fraudulent matters set forth by the plaintiff; and he further set forth facts which he contended amounted to a ratification of the contract by the plaintiff, and which also estopped her from contesting the validity of the instruments she had executed. This cross-complaint further asked that plaintiff's husband be made a party to the action, and this was done. A decree was sought that the note and mortgage in the hands of the cross-complainant be decreed good and valid. To this cross-complaint plaintiff made answer by denial, and affirmatively set up in avoidance of both the note and the mortgage the fraudulent matters which she had pleaded in her complaint.

Special issues upon many of these questions were submitted to the jury. Upon each and all of them they found for the plaintiff. The court adopted most of their findings and supplemented them with others of its own, and so rendered judg-

ment. It was found that both the note and mortgage were secured by fraud; that plaintiff had been guilty of no laches, nor had she acquiesced in or ratified her contract, and that the cross-complainant took with notice and knowledge of the facts.

It is insisted that the complaint itself shows a lack of equity, in that plaintiff's delay in commencing her action for cancellation is not sufficiently explained, and it is argued that the same omissions which render her complaint defective make her defense to the cross-complaint upon the ground of fraud itself insufficient. It is true, as appellant contends, that where a party seeks a rescission of a contract, he must act with promptness, and that the question as to what is or is not a prompt effort to rescind must depend in each case upon its own peculiar facts. It is also true that where a party seeks relief upon the ground of fraud or mistake the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake, but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three years' statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud. Of course, in such a case he incurs the risk of defeat by the intervention of the rights of innocent parties.

As to the mortgage considered as security apart from the promissory note, it has already been said that, regardless of the question of fraud in its procurement, it is a void instrument for a lack of execution in the manner demanded by the code. Since to be a valid mortgage upon the homestead it must be concurrently executed and acknowledged by both spouses, where not so executed neither could separately ratify it so as to give it validity, nor be estopped by conduct from asserting its invalidity, because under no circumstances could the act or conduct of either separately be held to validate such a void instrument

without doing violence to the plain letter of the law, which declares that the homestead may be encumbered in but one way. A different question might be presented if the husband and wife, their minds meeting upon the matter, jointly and concurrently by their conduct raised against themselves an estoppel *in pais*. But such is not the case here presented. As neither could be separately estopped so as to validate the mortgage, the absence of a finding upon the question of estoppel, if it be conceded that such an omission exists, is immaterial.

As to the note, however, the legal considerations are quite different. A wife defrauded or coerced into executing her promissory note may, after discovery of the fraud, or when freed from duress, condone the wrong, waive her right of action, and ratify her contract, or she may by conduct estop herself from future reliance upon the fraud or duress. But, if for a valuable consideration her note shall before maturity have passed into the hands of an innocent holder, such holder takes it free from these equities and defenses. It was charged in this complaint that the defendant Elton Church took with knowledge and without consideration. Upon the trial it was shown that he became the owner of the note before its maturity. The evidence was uncontradicted and corroborated that he paid a valuable and sufficient consideration for the note and mortgage by the extinguishment of a pre-existing debt owed by his mother to himself. It is well settled in this state that the extinguishment or security of a pre-existing debt constitutes a valuaole consideration for the sale or assignment of property. (*Frey v. Clifford*, 44 Cal. 335.) Elton Church, having shown that he took the note and mortgage before maturity, and that he paid a valuable consideration therefor, it was incumbent upon the plaintiff to prove that he had knowledge of the fraud and of the fraudulent intent of the vendor in making the sale to him. Upon this point we think plaintiff has failed. There was introduced in evidence a letter by the defendant Katharine Church to the mother of Roswell Hart, written after the transfer of the note and mortgage to her son. In this appear expressions sufficient to raise a doubt as to the honesty of the motive which actuated Mrs. Church in making the transfer, but we are unable to discern anything in the nature of evidence to show that the son took

with knowledge of the alleged fraud which had been practiced upon the plaintiff, or of the fraudulent intent of his mother in making the transfer, if such existed. It is the well-settled rule that where a plaintiff attacks a conveyance as in fraud of his rights, it is incumbent upon him first to show the fraudulent intent of the vendor. The burden then shifts to the purchaser to show a valuable consideration, and, this shown, the burden again shifts to the plaintiff, who must show the vendee's knowledge of the fraudulent intent of the vendor. (*Ross v. Wellman,* 102 Cal. 4.) As we read the evidence, there was a failure to show this knowledge upon the part of Elton Church. It follows therefrom that, while as to the mortgage the finding that he took with knowledge, even though erroneous, is without injury because the mortgage is absolutely void, as to the note this finding being unsupported, and since from the evidence introduced Elton Church stands in the position of an innocent purchaser, the decree declaring the note to be fraudulent and voidable and ordering its cancellation cannot be sustained.

Plaintiff's action being one in protection of her homestead right, her husband, Roswell Hart, was not a necessary party. (Code Civ. Proc., sec. 370; *Prey v. Stanley,* 110 Cal. 423.)

It is therefore ordered that the judgment of the trial court, in so far as it decrees invalid and orders the cancellation of the mortgage, be affirmed, but that it be modified by striking therefrom such portion thereof as decrees invalid and orders the cancellation of the note.

Temple, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment and in the opinion of Mr. Justice Henshaw. It is proper to say, however, that this decision is not to be taken as authority one way or the other on the question whether or not one, knowing the facts, who takes a note which, though negotiable in form, is secured by mortgage, is in the position of an indorsee in due course of negotiable paper, and can avoid equities existing between the original parties. That question was not raised in this case. It was raised in *Hays v. Plummer, ante,* p. 107, but was not there determined.

Hearing in Bank denied.