[Civ. No. 18579. First Dist., Div. One. Aug. 10, 1959.]

UNIVERSAL LAND COMPANY (a Corporation), Respondent, v. ALL PERSONS, Defendants; ESTELLE LATTA et al., Appellants.

Busick & Busick for Appellants.

Royal E. Handlos for Respondent.

BRAY, P. J.—Defendant Estelle Latta, purporting to act for herself and others, appeals from a judgment entered after an order sustaining demurrer by plaintiff to defendant's answer without leave to amend.

### QUESTION PRESENTED

Propriety of the sustaining of demurrer to answer without leave to amend.

### RECORD

Under the Destroyed Land Records Relief Law (pt. 2, tit. 10, ch. 3.5, Code Civ. Proc., Stats. 1953, ch. 52, § 6) plaintiff filed an action against all persons to establish title to real property. Defendant Estelle Latta filed an answer stating that she is one of the persons claiming "an interest in, or lien upon" the real property described in the complaint; that she is a direct descendant of a brother of Mark Hopkins; that she appears for herself and "all other heirs of Mark Hopkins similarly situated," whose names are set forth in her answer; that the other heirs are so numerous it is impractical to bring them all before the court; that the questions involved are of a common interest to all said heirs. The gravamen of her answer is that there were two Mark Hopkins, not related to each other. One came from North Carolina to Placerville in 1851. The other came from New York to Sacramento in 1849. The New York Mark Hopkins married Mary Frances Sherwood. In 1876 the New York Mark Hopkins died, leaving as his survivors his wife and their son Timothy. Thereafter Mary obtained a position as the housekeeper of the North Carolina Mark Hopkins. He died March 29, 1878, a resident of San Francisco, leaving surviving no wife, father, mother, or issue; but he left surviving as his heirs at law his eight brothers and sisters, one of whose descendants is defendant Estelle Latta. Their names are set forth. Mary is charged with fraud in obtaining letters of administration of his estate, in claiming to be his wife and failing to notify the county clerk of the names and addresses of said heirs which she well knew. Later

the North Carolina Mark Hopkins' brother Moses succeeded Mary as administrator of the estate. He likewise is charged with fraud in failing to reveal the names and addresses of his brothers and sisters and in instances in the 80's writing one of them to the effect that Mark was survived by a wife and children, and in another instance stating that Mark had left Moses all of his estate. It is charged that the decree of distribution in the Mark Hopkins estate is void because of the alleged fraud of Mary and Moses and the failure to notify the heirs of the probate proceedings including the obtaining of the two sets of letters of administration and the decree of final distribution in 1883 distributing the entire estate, three-quarters to Mary and one-quarter to Moses.

Defendant Estelle Latta prayed that she and the heirs of Mark listed in her answer be adjudged to be the owners of the described real property.

Plaintiff filed a general and special demurrer and among other grounds set forth laches and certain statutes of limitation. It further alleged that the questions raised by the answer had been determined adversely to defendant and the persons on whose behalf the answer was filed by the final judgments in *Freeman* v. *Hopkins*, 32 F.2d 756, and in *Latta* v. *Western Inv. Co.*, 173 F.2d 99. The court sustained the demurrer to defendant's answer without leave to amend.

### DEMURRER WAS PROPERLY SUSTAINED

In the first place, there is no allegation that the plaintiff took title with knowledge of the alleged fraud or of any circumstances to put plaintiff on notice. This is a requisite in a fraud action. As said in *Newport* v. *Hatton* (1924), 195 Cal. 132, 149 [231 P. 987], dealing with a judgment obtained through extrinsic fraud: "Appellants concede that any person acquiring title to any part of the property in good faith, and without knowledge of the fraud, is fully protected, notwithstanding the interests of the plaintiffs. Their rights cannot prevail over those of innocent purchasers in good faith and for value. That much is not disputed." See also *Newport* v. *Hatton* (1929), 207 Cal. 515, 520 [279 P. 134]; *Ferguson* v. *Ferguson* (1943), 58 Cal.App.2d 811, 814 [137 P.2d 735]; *Wool* v. *Scott* (1956), 140 Cal.App.2d 835, 843 [296 P.2d 17]; *Marlenee* v. *Brown* (1943), 21 Cal.2d 668, 678 [134 P.2d 770]. As said in the Ferguson case, *supra*, at page 814: "It is clear that if respondents were purchasers for value and without notice, taking their title through the decree of distribution

which constitutes a muniment of title immune to collateral attack, they cannot be charged as trustees and they hold the property free from any equity in plaintiffs. [Citations.]''

Secondly, the answer shows that the alleged defense is barred by section 319, Code of Civil Procedure, and by laches on its face. The extrinsic fraud (and only by extrinsic fraud could the decree of distribution which long since became final be attacked) consists in the failure of Mary and Moses in their then respective petitions for letters of administration to list the names and addresses of Mark Hopkins' brothers and sisters, the failure to send out notices of the application for the decree of distribution, the failure of Mary and Moses to disclose the pendency of the estate to Mark's sisters and other brothers (it appears in the answer that one of the brothers, Samuel, was aware of the proceedings), plus the alleged misrepresentations of Moses in the early 80's (whether during or after the probate proceedings were concluded does not appear).

Assuming that extrinsic fraud was thereby alleged* the

---

*While section 1371, Code of Civil Procedure, at the time of the probate proceedings, provided that the petition for letters of administration should state "the facts essential to give the Court jurisdiction of the case" and the names and addresses of the heirs of the decedent known to the petitioner, it also provided "If the jurisdictional facts existed, but are not fully set forth in the petition, and are afterwards proved in the course of administration, the decree or order of administration and subsequent proceedings are not void on account of such want of jurisdictional averments." At that time the only notice of the petition required to be given by the clerk was a notice by posting. (Code Civ. Proc. § 1373, and *Nicholson* v. *Leatham* (1915), 28 Cal.App. 597, 601 [153 P. 965, 155 P. 98].) Notice of the petition for distribution was to be given either by posting or publication as the court might direct (§ 1668.) There is no allegation that the notices required by these sections were not given. In *Latta* v. *Western Inv. Co., supra*, 173 F.2d 99, the court seemed to consider the allegations as to withholding the names and addresses of the heirs and the failure by Mary and Moses to notify them of the proceedings, as sufficiently alleging extrinsic fraud. However, in *Monk* v. *Morgan* (1920), 49 Cal.App. 154, 162 [192 P. 1042], the court held that an administrator of an estate, either in his capacity as coheir or as administrator, is under no duty to inform his coheirs of the death of the decedent, his appointment as administrator or of any of the proceedings in the estate, other than through the giving of the notices required by law to be given during such administration and which having been duly given constitute constructive notice to the decedent's heirs as to all proceedings had in the course of the administration of the estate. Therefore, the failure to list the heirs in the petition for administration, or to notify the heirs of the death and the estate proceedings, and even misrepresentations by the administrator as to who were the sole heirs of the decedent, did not constitute such extrinsic fraud as would entitle a court to declare the decree of distribution in that estate void. (See also *Mulcahey* v. *Dow* (1900), 131 Cal. 73 [63 P. 158].)

answer is barred by section 319, Code of Civil Procedure, and by laches. In *Latta* v. *Western Inv. Co., supra,* 173 F.2d 99, 107, defendant Estelle Latta brought an action to declare the decree of distribution in the Mark Hopkins estate void on the identical grounds urged here. In holding that her complaint was barred by the provisions of section 338, Code of Civil Procedure, the court said (p. 107): "The alleged fraud was completed upon the granting of the decree of distribution in 1883, and as heretofore pointed out, the appellants have had actual knowledge of the alleged fraud herein complained for over twenty years. Time, death and destruction by fire have blotted out the events of that period beyond the restoration of the living. It is not only a closed chapter but a sealed chapter in the lives of those involved. The burned records cannot be restored. The dead cannot be resurrected. The fortune accumulated by Mark Hopkins long ago passed through and into many hands, far removed from the generation in which he lived. To attempt to disentangle this estate would be unjust and inequitable. Equity frowns upon stale demands. Equity declines to aid those who have slept on their rights. The appellants' alleged claims long ago were lost by reason of gross laches." We adopt that language in applying the bar of section 319 to defendant's answer here. (Defendant contends that she is not seeking to have the decree of distribution declared void as she was trying to do in the above mentioned case, but to have her title and that of the others to the real property adjudged.) But the answer contains no allegations that defendant or the ancestor or predecessor defendant was seised or possessed of the property within five years as required by section 319, Code of Civil Procedure. As said in *Fugl* v. *Witts,* 97 Cal.App.2d 495, 496 [218 P.2d 102]: "Since defendant was not seised or possessed of the premises in question within five years before the commencement of the action, he neither had (1) a cause of action entitling him to have title quieted in him to the property, nor (2) a defense to plaintiff's cause of action to have the title to the property quieted in plaintiff. (Code Civ. Proc., § 319.)" It should be noted that section 319 provides: "No cause of action, *or defense to an action,* arising out of the title to real property . . . can be effectual, unless it appear that the person prosecuting the action, *or making the defense,* . . . or the ancestor, predecessor or grantor of such person was seised or possessed of the premises in question within five years . . ." (Emphasis added.)

The answer contains no allegation of when the alleged fraud was discovered by defendant nor that she acted promptly and with diligence to protect any rights she might have had. For the necessity of such allegations in this type of case see *Del Campo* v. *Camarillo*, 154 Cal. 647 [98 P. 1049] ; 18 Cal.Jur.2d p. 228, § 53; 23 Cal.L.Rev. 79. In view of the fact that almost 75 years had passed since the entry of the decree of distribution, all the original participants are dead, the records were destroyed in the 1906 fire, the fact that in 1929 one Freeman, in *Freeman* v. *Hopkins, supra,* 32 F.2d 756, claiming to be an heir of Mark Hopkins and purporting to act on behalf of about 450 other alleged heirs, brought suit claiming that certain securities belonging to Mark Hopkins had been falsely concealed and not included in the assets of the estate on distribution, and pointing out that none of the brothers and sisters of Mark, except Moses, had been named in the decree of distribution, and that defendant herself in 1948 (approximately 10 years before filing this suit) had brought suit (*Latta* v. *Western Inv. Co., supra,* 173 F.2d 99) setting up the very grounds of fraud alleged here and alleging, according to the opinion in that case, ·that the alleged fraud was discovered in 1945, and that defendant in nowise attempts to excuse the laches in not bringing this action sooner, the fact that the properties of the Mark Hopkins estate have been in the hands of many purchasers, none of whom are claimed not to be bona fide purchasers for value without notice,—all of these show that in sustaining the demurrer without leave to amend the court not only did not abuse its discretion but would have abused its discretion had it not done so.

 Defendant's main contention is that even though if she were bringing an action to quiet title on the grounds of fraud alleged in her answer the cause of action might be barred by laches and section 319, Code of Civil Procedure, these bars cannot be applied to the matters set forth in her answer in which she merely asks that she and the other alleged heirs be adjudged to own the real property originally belonging to Mark Hopkins. The cases she cites in support of this contention are not in point for two reasons: (1) they only apply to answers which do not seek affirmative relief, and here defendant asks that she and the others be adjudged owners of the real property, and (2) they do not apply to

cases where the plaintiff is not a party to the alleged fraud nor has knowledge of it.

1. In *Islais etc. Water Co.* v. *Allen* (1901), 132 Cal. 432 [64 P. 713], an action to quiet title in which the defendant prayed that he be adjudged the owner of the property described in the complaint, the court held that he was seeking affirmative relief, saying concerning the answer "there were affirmative allegations, which, if sustained by the evidence, entitled the defendant to affirmative relief, *and such relief was demanded.*" (P. 437; emphasis added.) And as pointed out hereinbefore, section 319, Code of Civil Procedure (as well as section 338, subdivision 4, if defendant were seeking to set aside the decree of distribution) bars defendant's alleged cause of affirmative defense. *Sullivan* v. *Compton* (1943), 61 Cal.App.2d 500 [143 P.2d 357], where the answer alleged a claim of lien in the property described in the plaintiff's action to quiet title and the court held that the answer did not seek affirmative relief, is not in point as the prayer only asked that the plaintiff take nothing by his complaint. The court distinguished that case from *Islais etc. Water Co.* v. *Allen, supra,* 132 Cal. 432, by pointing out that the answer there, as does the answer in our case, specifically prayed for a decree determining that the defendant was the owner of the property. In *Hungarian Hill G. M. Co.* v. *Moses,* 58 Cal. 168, likewise, the answer prayed merely that the plaintiff take nothing by its complaint.

2. The cases relied upon by defendant were all cases in which not only were the defendants not seeking affirmative relief, but also the plaintiffs were either charged with the fraud or having obtained their title with knowledge of it. Thus, in *McColgan* v. *Muirland* (1905), 2 Cal.App. 6 [82 P. 1113], an action to recover on a judgment, the action was brought by the very person (and his assignee of an interest) whom the defendant charged with procuring the judgment by fraud, and the defendant merely asked that the plaintiffs take nothing by their complaint. In *Estate of Cover,* 188 Cal. 133 [204 P. 583], the son of the decedent petitioned to have the widow removed as administratrix of the decedent's estate, based upon an agreement executed some 10 years prior by her and the decedent in which she waived all her rights to inherit. She answered claiming that the agreement had been obtained by fraud of the decedent, the son and another. In holding that laches and the statutes of limitation did not apply to her

defense, the court pointed out that she was not seeking affirmative relief. Again here there was no question of the plaintiff being free from the taint of fraud. In *J. B. Colt Co.* v. *Freitas* (1926), 76 Cal.App. 278 [244 P. 916], the action was brought by the company that the defendant charged with fraud in obtaining the promissory note sued upon. The court said (p. 287) : ''Where fraud is relied upon as a defense merely 'neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court, and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud.' (*Estate of Cover,* 188 Cal. 133, 140 [204 P. 583, 587].)'' In *Hart* v. *Church,* 126 Cal. 471 [58 P. 910, 59 P. 296, 77 Am. St.Rep. 195], the court states that a person defending against the enforcement of a fraudulent contract is not barred by the statutes of limitation in excusing himself from performance by proof of the fraud, but, the court points out, ''in such a case he incurs the risk of defeat by the intervention of the rights of innocent parties.'' (P. 479.) *Cox* v. *Schnerr* (1916), 172 Cal. 371 [156 P. 509], was an action by a person relying upon a deed which the defendant charged he had procured by fraud. *Evans* v. *Duke* (1903), 140 Cal. 22 [73 P. 732], likewise was an action upon a contract which the defendant alleged was obtained through the plaintiff's fraud. The court held that the defendant was barred by laches from asserting affirmative relief but not from merely defending the action on the ground of the fraud. It then quoted from *Hart* v. *Church, supra,* 126 Cal. 471, 479, to the effect that in his defense of fraud a defendant '' '. . . incurs the risk of defeat by the intervention of the rights of innocent parties.' '' Thus it clearly appears that both the statutes of limitation and laches will apply to an answer which either asks for affirmative relief or seeks to defend against the claims of innocent persons.

*Raisch* v. *Myers* (1946), 27 Cal.2d 773 [167 P.2d 198], deals with the situation where the court held that the pleading of the statutes of limitation ''should not avail a property owner to the prejudice of a subordinate lien claimant in the

extinguishment of a valid lien where the *status quo* is disturbed by foreclosure of a superior lien.'' (P. 781.) The court said: ''In the state of the record as analyzed, equally applicable here are the equitable principles governing cases where the property owner seeks affirmative relief in a quiet title action against an outstanding lien that cannot be foreclosed by reason of the bar of the statute of limitations. In the one as in the other situation, the property is still subject to the lien and the lien claimant will be protected as against a property owner seeking an affirmative advantage without doing equity as the circumstances require.'' (P. 781.) But there the property owner knows or should know of the existence of the liens as they are of record, and hence he is not an innocent person who in the other situations disclosed by the cases may set up the bars of the statute and laches.

In view of our decision, we deem it unnecessary to discuss the other points urged by plaintiff for affirming the action of the trial court.

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.